ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD, Petitioner-Appellee, v. HOMER COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 208, Respondent-Appellant (Homer Association of Teachers, IEA-NEA, Intervenor-Appellee).

Fourth District   No. 4—87—0188

Opinion filed August 5, 1987.—Modified on denial of rehearing October 22, 1987.

LUND, J., specially concurring.
McCULLOUGH, J., dissenting.

John T. Taylor, Everett E. Nicholas, Jr., and Michael Foley, all of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Decatur, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Randi C. Ham-

mer, of Illinois Educational Labor Relations Board, of Chicago (Roma Jones Stewart, Solicitor General, and Valerie J. Peiler, Assistant Attorney General, of Chicago, of counsel), for appellee Illinois Educational Labor Relations Board.

Gregory J. Malovance and Stephen S. Morrill, both of Winston & Strawn, of Chicago, for appellee Homer Association of Teachers.

Brian A. Braun, of Miller, Tracy, Braun & Wilson, Ltd., of Monticello, for *amicus curiae.*

JUSTICE GREEN delivered the opinion of the court:

This case arises under the recently enacted Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 1701 *et seq.*). In the heat of a labor dispute between respondent Homer Community Consolidated School District No. 208 (school district) and the duly constituted bargaining unit for its teachers, intervenor Homer Association of Teachers, IEA-NEA (Association), and during a resultant strike by the Association, litigation has resulted from charges and countercharges of unfair labor practices. During the course of these proceedings, the school district has been ordered to give virtually unqualified discovery to the Association of the matters that have transpired in the closed-session meetings of the governing board of the school district in which its strategy in regard to the negotiations and the strike were discussed. The school district has been ordered to produce for the Illinois Educational Labor Relations Board (Board) various notes and minutes concerning those meetings and to present the members of its governing board to testify concerning matters transpiring at those meetings.

We recognize that the Association indicated some willingness for some limitations on the discovery and the court stated it would consider making some restrictions, but the school district insisted on a complete privilege of exclusion being applied to the transactions involved. However, the extent of the discovery granted was virtually unprecedented as far as any authority cited to us would indicate. Because of the recentness of the legislation involved, the lack of precedent on point, and the collateral consequences of permitting the unqualified discovery given, we hold that the school district did not waive any right to have restrictions placed on any discovery that might be allowed. We also take the extraordinary step of holding that the information sought was subject to a qualified privilege which must be applied on remand.

Between September 1986 and January 1987, the Association and the school district filed various unfair labor practice charges against each other with the Board pursuant to section 15 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1715). The strike began on October 17, 1986, and continued in existence during all times pertinent. Acting further pursuant to section 15, the Board considered the charges and issued three complaints of unfair labor practice against each of the parties. The complaints were set for a consolidated hearing, but prior to the hearing, the Association filed a request for production of documents upon the school district, and it filed objections. At the hearing, the school district filed a motion *in limine* asking that the Association be directed not to attempt to elicit evidence concerning the school district's closed-session deliberations attendant to bargaining. Acting pursuant to section 15, the Board's hearing officer denied the school district's objections and request for motion *in limine*. A member of the school district's governing board refused to testify concerning matters transpiring at closed sessions when the school district's bargaining strategy was being discussed. The Board's hearing officer ordered issuance of a subpoena *duces tecum* for the documents requested, and the school district refused to comply.

On February 25, 1987, the Board filed suit in the circuit court of Champaign County seeking enforcement of the Board's subpoena and an order requiring the members of the school district's governing board to testify concerning matters transpiring at the closed meetings, all as also authorized by section 15 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1715). The Association was apparently permitted to intervene. After a hearing, the circuit court entered an order on February 27, 1987, ordering the production of the documents and the testimony of the witnesses. The school district has appealed. We reverse and remand for a rehearing in the circuit court pursuant to directions we will later explain.

The documents requested by the Association, to which the school district objected, are as follows:

"(1) [A]ll bargaining notes or minutes which have been taken by the District, (2) all bargaining proposals made by the [Association] or the District upon which the District made any mark or notation, (3) all documents (excluding bargaining notes and proposals) which relate to the District's bargaining objections [*sic*], strategy or tactics, (4) all documents which relate to any plan or action of the District in the event of a strike by the [Association] of the effectuation or implementation of any such plan or action, [and] (5) all documents which relate to any discussion or

communication by the District concerning bargaining, any grievances which were filed by the [Association] or any of its members since April 10, 1986, or the strike by the [Association]."

The information sought by the Association relates to possible statements or proposals made or tentative agreements reached in closed meetings where bargaining strategy was discussed which might shed light on allegations that the school district was not bargaining collectively in good faith. Good-faith bargaining is required of educational employers' and employees' bargaining representatives by section 10 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1710), and the failure to do so is designated an unfair labor practice by sections 14(a)(5) and (b)(3) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(5), (b)(3)).

The problem presented here is a phase of the inherent conflict between the usually predominant public policy of maintaining court and administrative proceedings as forums for the determination of the truth and public policy which for some reason favors that certain matters be kept in confidence (see McCormick, Evidence sec. 72(a), at 170 (3d ed. 1984)). The public policy to be served by suppressing evidence here is that of enabling parties to adversarial collective bargaining to plan a strategy without having it revealed to their adversaries. This confidentiality is particularly necessary during the course of the dispute, but it is also important afterwards because of future bargaining which may take place between the parties. Of most importance is the ability of each of the sides to keep confidential the extent to which it would be or might have been willing to make concession. Confidentiality is also important because it enables the persons involved to speak freely about their adversaries without the damage to future relationships that might result from disclosure of those statements.

The Association and the Board contend that school districts are given substantial protection from undue disclosure requirements because: (1) before the Board can issue a complaint, a showing must be made that the charge of unfair labor practice has substance; and (2) only material relevant to the complaint is subject to discovery.

Section 15 of the Act states in part:

"A charge of unfair labor practice may be filed with the Board by an employer, an individual or a labor organization. If the Board after investigation finds that *the charge states an issue of law or fact,* it shall issue and cause to be served upon the party complained of a complaint which fully states the charges * * *." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 48,

par. 1715.)

The language requiring the charge to state " an issue of law or fact" does not place any substantial burden upon the one preparing the charge. The statute does require an investigation, but even if that wording indicates that the Board must find some evidence of the existence of an unfair labor practice, such a situation is likely to exist in the heat of most strike situations. Notably, here, the Board found grounds for three complaints against each of the parties.

■ As has been indicated, the thrust of the complaints against the school district is that it did not bargain in good faith. When that is in issue, all of the circumstances of the bargaining have been said to have some relevancy. (*Service Employees International Local Union No. 316 v. Illinois Educational Labor Relations Board* (1987), 153 Ill. App. 3d 744, 505 N.E.2d 418; see 48 Am. Jur. 2d *Labor & Labor Relations* sec. 1028 (1979).) Thus, because of the wide scope of relevancy, the tension between the truth-seeking process and the need for confidentiality is at a high level here. If a broad interpretation of relevancy is the only qualification for discovery here, the school district's deliberations of strategy will receive little protection.

The school district seeks to protect its bargaining strategy from being disclosed by reliance on Illinois legislation concerning the conduct of public meetings and access to public records. It maintains that this legislation makes information as to matters occurring in executive session of its meeting privileged from discovery for litigation.

Section 2 of the Open Meetings Act requires school boards, as well as other governmental bodies, to conduct their meetings open to the public with certain exceptions. One of these exceptions is for "collective negotiating matters between public employers and their employees or representatives." (Ill. Rev. Stat. 1985, ch. 102, par. 42.) Section 2.06 of the Open Meetings Act then makes the following requirements in regard to the keeping and disclosure of minutes of public meetings:

"(a) All public bodies shall keep written minutes of all their meetings, whether open or closed. Such minutes shall include, but need not be limited to:

(1) the date, time and place of the meeting;

(2) the members of the public body recorded as either present or absent; and

(3) a general description of all matters proposed, discussed, or decided, and a record of any votes taken.

(b) The minutes of meetings open to the public shall be available for public inspection within 7 days of the approval of

such minutes by the public body. Minutes of meetings closed to the public shall be available only after the public body determines that it is no longer necessary to protect the public interest or the privacy of an individual by keeping them confidential." Ill. Rev. Stat. 1985, ch. 102, par. 42.06.

Section 3 of the Freedom of Information Act (Ill. Rev. Stat. 1985, ch. 116, par. 203) requires records of public bodies of the State to be kept open for public inspection or copying. However, many exemptions are stated. Section 7(f) exempts "[p]reliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated" with exceptions not applicable here. (Ill. Rev. Stat. 1985, ch. 116, par. 207(f).) Subsection (m) exempts minutes of meetings properly closed under the Open Meetings Act until the public body makes them available. Subsection (q) exempts the following:

"Documents or materials relating to collective negotiating matters between public bodies and their employees or representatives, except that any final contract or agreement shall be subject to inspection and copying." Ill. Rev. Stat. 1985, ch. 116, par. 207(q).

No case deciding whether either the Open Meetings Act or the Freedom of Information Act provides privilege against required disclosure in litigation has been called to our attention. However, the purpose of those acts is to provide the general public with access to information previously unavailable. That same information was not unavailable to required disclosure for purposes of litigation unless it was subject to a privilege. The exceptions set forth in that legislation clearly appear to be exceptions to the newly created duty to disclose to the public. Information covered by those exceptions retains the same confidentiality that it had before enactment of the legislation. That confidentiality did not necessarily involve a privilege from required disclosure in litigation.

The need of parties to litigation to information determining their rights is usually stronger than the need of the general public to be informed on a matter. In enacting the Open Meetings Act and the Freedom of Information Act and creating exceptions to disclosure thereunder, the legislature was balancing the need of the public to be informed against the need for confidentiality. The legislature was not balancing the need of litigants for information against the need for confidentiality. Illustrative of this principle is the decision in *Bell v. Bankers Life & Casualty Co.* (1945), 327 Ill. App. 321, 64 N.E.2d 204. There, legislation concerning old-age pensions prohibited dissemination

of matters in the records concerning applicants except as required in connection "with the administration of pensions" (Ill. Rev. Stat. 1943, ch. 23, par. 419). However, the reviewing court held that in litigation not involved with the administering of the pension system, the information contained in an application for a pension was subject to subpoena. See also *Krupp v. Chicago Transit Authority* (1956), 8 Ill. 2d 37, 132 N.E.2d 532.

Even though we do not deem the cited provisions of the Open Meetings Act and the Freedom of Information Act to have spoken to the question of whether the deliberations of the protected meetings where collective-bargaining strategy was discussed were immune from discovery for litigation purposes, we do consider that legislation to have indicated a strong public policy to protect the confidentiality of those deliberations. The concepts of collective bargaining include a recognition of the disparity of interests involved which, inherently, makes the bargaining process an adversarial one at times. The process is damaged if the parties cannot plan their bargaining strategy under circumstances where they have a reasonable expectation of confidentiality. Allowance of that confidentiality does not in any way hinder the opportunity of the parties to respect each other and to recognize their common interests.

This country has experienced half a century of extended litigation concerning collective bargaining in the private sector and now several years of similar public sector litigation, but we are unaware of substantial precedent for requiring a party to such litigation to give discovery as to its strategy deliberations. The closest case called to our attention is that of *Newark Board of Education v. Newark Teachers Union, Local 481,* (1977), 152 N.J. Super. 51, 377 A.2d 765. There, a dispute arose before an agency as to the terms agreed to by the parties to a collective-bargaining agreement. The reviewing court upheld a subpoena directed to notes taken by or on behalf of the employer during face-to-face negotiations with the employees' bargaining agent. The question of the discoverability of the private deliberations of a party was not in issue.

We conclude that here, as the parties, the Board and the court struggled with new concepts, a discovery order evolved which was of a type seldom used. We deem the order, in its full breadth, to be damaging to an effective collective-bargaining procedure and improper.

We have not found any statutory provision which gives the school district protection from the type of discovery ordered, nor do we know of any statute which would protect the Association from discovery as to their deliberations over bargaining strategy. We are also un-

able to cite any generally recognized common law privilege which would give protection from this type of discovery. However, the Board and the Association have indicated a recognition that some restrictions could have been placed on the breadth of the order, and the circuit court indicated that it would have considered doing so if asked. Any such restrictions, beyond a requirement that the matters subject to discovery be relevant, would constitute the invoking of some sort of a qualified privilege.

■ As an intermediate court of review, we are reluctant to attempt to define a common law privilege. However, we note that Rule 501 of the Federal Rules of Evidence (Fed. R. Evid. 501), which provides for privilege, does not attempt to define or even list the various common law privileges. The United States Supreme Court has stated that the intention of Rule 501 is to "provide the courts with the flexibility to develop rules of privilege on a case-by-case basis" (*Trammel v. United States* (1980), 445 U.S. 40, 47, 63 L. Ed. 2d 186, 193, 100 S. Ct. 906, 911). The Illinois Supreme Court has given substantial deference to the Federal Rules of Evidence. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322.) Accordingly, we proceed to set forth an application of the rule of qualified privilege which can be applied here to balance the interest in finding the truth with the need of a party to be able to plan negotiating strategy with a reasonable expectation that it will not have to reveal that strategy to its opponents. Unlike any privilege which would arise from the Open Meetings Act or the Freedom of Information Act, this qualified privilege will be available equally to employers or the bargaining representative of employees in their bargaining unit.

The reasoning of the opinion in *Equal Employment Opportunity Com. v. University of Notre Dame Du Lac* (7th Cir. 1983), 715 F.2d 331, is persuasive. The case involved proceedings before the Equal Employment Opportunity Commission for the Federal government on charges that the defendant university had discriminated on the basis of race in denying a faculty member tenure. The Commission had issued a subpoena for the defendant's files concerning review recommendations made by faculty members. The Federal district court upheld the subpoena. The Circuit Court of Appeals for the Seventh Circuit reasoned that confidential peer review was such a significant element of academic freedom that a qualified privilege was required to protect the files sought. In proclaiming this privilege, the reviewing court relied upon the interpretation of Rule 501 of the Federal Rules of Evidence (Fed. R. Evid. 501) set forth in *Trammel v. United States* (1980), 445 U.S. 40, 47, 63 L. Ed. 2d 186, 193, 100 S. Ct. 906, 910.

The qualified privilege defined was that of need or necessity. The circuit court then remanded the case to the district court with directions that it hold an *in camera* proceeding to determine the necessity of the documents requested, to weigh that against the need for confidentiality and to proceed accordingly.

The Seventh Circuit described the burden upon a party seeking discovery of information subject to the privileges qualified by need or necessity as "a burden similar to that imposed on a party seeking disclosure of [Federal] grand jury materials." (*Equal Employment Com. v. University of Notre Dame Du Lac* (7th Cir. 1983), 715 F.2d 331, 338.) The cases of *Illinois v. Abbott & Associates, Inc.* (1983), 460 U.S. 557, 75 L. Ed. 2d 281, 103 S. Ct. 1356, and *In re Grand Jury Proceedings, Miller Brewing Co.* (7th Cir. 1982), 687 F.2d 1079, were cited. Application of the qualified privilege was stated to require a weighing of the probative value of the information against the damage to the policy underlying the privilege. Importance was given to the degree to which the party seeking discovery has other access to the information sought. The opinion also indicated that the party seeking the information was required to have exhausted every other source of the same information. Mere relevancy was stated to be an insufficient ground for requiring disclosure.

■ We hold that a similar qualified privilege subject to necessity is involved here. We reverse the decision of the circuit court ordering the production of documents and requiring the testimony of witnesses and remand with directions (1) that the school district be required to furnish to the court all of the requested but unfurnished documents and information; and (2) that a subpoena issue for the appearance before the circuit court of all persons whom the Association wishes to examine concerning matters taking place in executive session meetings of the governing board of the school district where bargaining strategy was discussed. A hearing before the circuit court shall be set at an appropriate time.

At the hearing before the circuit court, the parties seeking discovery shall put on any evidence they wish in support of the necessity for the disclosure of the information sought and all parties shall have an opportunity to argue as to the necessity for disclosure. At this time, the parties seeking authority to examine witnesses concerning previously described executive sessions may present to the court, orally or preferably in writing, questions for the court to ask the witnesses *in camera*. Then, *in camera* and out of the presence of any party, attorney or representative of any party, the court shall separately examine any of the subpoenaed witnesses. At that time, or previously, if the

court deems the same advisable, the court shall examine, also *in camera* and out of the presence of any party, attorney or representative of any party, the documents and material presented.

After the foregoing procedure has been followed, the court shall, in due course, rule as to (1) which, if any, documents and materials presented or portions thereof are subject to discovery; and (2) which, if any, questions the witnesses must be required to answer.

■ The procedure we require places a burden on the party seeking discovery, but such is necessary if the conflicting interests are to be protected. Substantial confidentiality should be given to the strategy sessions. Ordinarily, the unfair labor practices charged can be shown on the basis of what the party agreed to or refused to agree to, by its pronouncements or by the acts of its agents such as would occur if threats were made. However, if, for instance, the school district's governing board should tacitly agree in a strategy session that it would never settle, evidence of that tacit agreement would not be privileged.

■ In its petition for rehearing filed after the filing of our original opinion, the Board expresses concern that we remand to the circuit court directing that it conduct the *in camera* proceedings rather than remanding to the Board for that purpose. The Board points out that pursuant to section 5(h) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1705(h)), it has enacted rules setting up a procedure for ruling upon the propriety of subpoenas and requests for production of documents. It is concerned with the effect our decision will have upon the operation of those rules and similar rules of other administrative agencies. The Board also maintains that it has greater expertise than the circuit court to rule upon matters to be considered at the *in limine* hearing and that greater efficiency will result from permitting it to do so.

Our decision to remand the case to the circuit court rather than the Board is based on two factors.

We begin discussion of our first reason by noting that the legislature has designated a procedure under section 15 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1715) whereby the Board can enforce its subpoenas and compel testimony. The Board followed that procedure in the instant case. While the Board has power to make rules, it has no power to hold a party in contempt nor can a party be held in contempt for violating its orders. Only when a party refuses to obey an order of the circuit court may it be held in contempt for its default. An order by the Board to produce evidence or to give disclosure is not a final order of the Board subject to administrative review under

section 16 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1716). Thus, a party aggrieved by such an order cannot obtain review of the order until the case has been completed, and any confidentiality in the information involved is lost unless it defies the order and compels the Board to proceed under section 15.

We interpret the portions of section 15 providing for the enforcement of subpoenas to provide for a full hearing in the circuit court, involving the receipt of evidence if necessary, in order that a determination may be made as to whether the information sought is subject to discovery or production. The proceeding is not one whereby a determination of discoverability by the Board is to be reviewed for error or to be presumed to be correct. Under the statutory format, the section 15 proceeding is one where a party claiming privilege to material that is sought may obtain a determination as to whether disclosure is required and obtain review of that ruling and, at least, seek a stay of that ruling pending review.

The procedure involved here is not unlike the situation in civil cases where a party claiming privilege often must defy orders to produce and be held in contempt in order to gain review of the decision requiring disclosure before making disclosure and losing confidentiality. (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 429 N.E.2d 483.) This court has described this procedure as a "distasteful method" but one that is sometimes necessary. (*In re M.B.* (1985), 137 Ill. App. 3d 992, 995, 484 N.E.2d 1154, 1157.) Here, however, once the circuit court has entered an order under section 15 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1715), that order is appealable to this court as an order final as to the section 15 circuit court proceeding and thus appealable as a matter of right. The party contesting the propriety of the subpoenas need not force a contempt finding to obtain appealability.

Were the cause here remanded to the Board to hold the *in limine* proceeding and the school district dissatisfied with the ruling, the school district would have to defy the order of the Board and retrigger section 15 proceedings to obtain review. With the circuit court holding the hearing, it can enforce its order directly and appeal can directly be obtained in this court. Because of the limited powers of the Board, remand to the circuit court would be more efficient.

The other reason for remanding to the circuit court is more obscure. Judges are often placed in situations where they must become privy to information which is prejudicial to a party but is not subject to consideration in deciding the merits of a dispute. This creates an awkward situation which should be avoided when that can reasonably

be done. The situation here would be even more difficult for the Board if it was to become privy to the matters disclosed in the *in limine* hearing and then decide the merits of the case. We have held that information involving the bargaining strategy sessions does not become discoverable merely because it is relevant. It must meet the necessity standard. A great burden would be placed on the Board if, after hearing what happened in the various meetings, it is then required to make a decision on the merits without considering matters which do not meet the necessity standard.

The Board need not be put into this position and the party subject to a discovery order need not be subjected to fears that the Board would be subtly influenced. The circuit court is placed in a rare position of detachment in making the decision as to the discovery to be required and the Board will then be placed in a position of detachment in deciding the merits.

We know of no authority which requires us to remand to the Board to hold the *in limine* proceeding. The court of appeals remanded to the district court rather than the administrative agency for the *in limine* hearing in *Equal Employment Com. v. University of Notre Dame Du Lac* (7th Cir. 1983), 715 F.2d 331. The considerations we have discussed favor remandment to the circuit court.

Accordingly, we reverse and remand to the circuit court of Champaign County with directions to proceed as set forth herein.

Reversed and remanded with directions.

JUSTICE LUND, specially concurring:

I concur with the decision set forth in the opinion authored by Justice Green but desire to comment on the determination as to who should perform the *in camera* examination.

The circuit courts are the source of enforcement for the Illinois Educational Labor Relations Board's subpoena power. (Ill. Rev. Stat. 1985, ch. 48, par. 1715.) Yet, the Board is the ultimate fact-determining body, with review being by the appellate court. The expertise of the Board, illustrated by its selection and the special experience achieved by its executive director, presents a strong argument that the *in camera* examination be done within the confines of the Board.

In suggesting that the proper *in camera* examiner might be within the confines of the Board, I recognize that one of the legislative purposes in enacting the Act was to seek a solution to public education disruptions. With the *in camera* examination being within the confines of the Board, delays in a determination of unfair labor

charges might not be subject to the delays inherent in the circuit court calendar. I find no legitimate reason to doubt the fairness, ability, or the integrity of the Board's members or the executive director.

Because of my concurrence with Justice Green's opinion, it is not necessary to state with exactitude the personnel within the confines of the Board qualified to perform the *in camera* examination. As determined by Justice Green's opinion, the *in camera* examination would be "out of the presence of any party, attorney, or representative of any party."

Regardless of my comments, it is necessary that a determination be made by this court, and I fully concur with Justice Green's opinion.

JUSTICE McCULLOUGH, dissenting:

The motion for discovery in its present form should be denied. The Association argues that the Open Meetings Act does not apply to the present proceeding because it is exempted by section 18 of the Education Labor Relations Act (Act). (Ill. Rev. Stat. 1985, ch. 48, par. 1718.) The school district argues that the Open Meetings Act and the Educational Labor Relations Act be read together, are not in conflict with each other, and that pursuant to section 2a (Ill. Rev. Stat. 1985, ch. 102, par. 42a) of the Open Meetings Act, collective negotiating matters are exempt from the requirement that it be an open meeting. This argument is unnecessary. The following is my reasoning.

The Open Meetings Act as passed, approved and effective July 11, 1957, and amended subsequently thereto, provides in section 1, "[i]t is the public policy of this State that the public commissions, committees, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of this Act that their actions be taken openly and that their deliberations be conducted openly." (Ill. Rev. Stat. 1985, ch. 102, par. 41.) Prior to the passage of the Open Meetings Act, there were no statutory controls with respect to private meetings of such boards and agencies. This act set forth the procedure which should be followed with respect to such meetings. Section 2 provides that all meetings of public bodies shall be open to the public, with specific exceptions. Collective negotiating matters between public employers and their employees or representatives is an exception. Ill. Rev. Stat. 1985, ch. 102, par. 42.

In order to better understand the legislative intent, we then go to the Educational Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, par. 1701 *et seq.*). Once again, the policy of that Act is to "promote orderly and constructive relationships between all education employees and their employers." (Ill. Rev. Stat. 1985, ch. 48, par. 1701.) The

purpose of the Act is to regulate labor relations between the employers and employees including the designation of representative, negotiation of wages, hours, and other conditions of employment and the resolutions of disputes arising under collective-bargaining agreements. Educational employers are required to negotiate and bargain with employee organizations representing educational employees and to enter into written agreements evidencing results of such bargaining and also to establish procedures to provide for the protection of the rights of the educational employee, the educational employer and the public.

Section 17 of the Act states "[i]n case of any conflict between the provisions of this Act and any other law *** the provisions of this Act shall prevail and control." (Ill. Rev. Stat. 1985, ch. 48, par. 1717.) Section 18 provides that "[t]he provisions of the Open Meetings Act shall not apply to collective bargaining negotiations and grievance arbitrations conducted pursuant to this Act." (Ill. Rev. Stat. 1985, ch. 48, par. 1718.) Section 1 of the Freedom of Information Act (FOIA) states in part, "[t]his Act shall be the exclusive State statute on freedom of information, except to the extent *** other laws in Illinois might create additional obligations for disclosure of information to the public." (Ill. Rev. Stat. 1985, ch. 116, par. 201.) Section 7(q) exempts "[d]ocuments or materials relating to collective negotiating matters between public bodies and their employees or representatives, except that any final contract or agreement shall be subject to inspection and copying." (Ill. Rev. Stat. 1985, ch. 116, par. 207(q).) The Act and FOIA are not in conflict.

As stated heretofore, not only did the Open Meetings Act provide for an exception concerning collective-bargaining negotiations, but, under the provisions of the Educational Labor Relations Act, the Open Meetings Act was made inapplicable to educational labor relations problems.

The legislature has expressed a clear intent that negotiation matters conducted at board meetings should not be discoverable, are not subject to the Open Meetings Act, and are not subject to discovery under the Freedom of Information Act. The legislature did not intend to grant such authority to the Educational Labor Relations Board in the instant case. This is a matter of important public policy and the proper course for the judicial brand of government to follow is to deny the motion for discovery as requested by the Association in this case. If the legislative branch desires that the Educational Labor Relations Board should have the authority requested by the Board, it will bestow the same in unmistakable terms.

The majority stresses that the Open Meetings Act and FOIA do

not involve privilege from required disclosure in litigation. Even Supreme Court Rule 201(b)(2) would not require disclosure of bargaining proposals, bargaining objections, strategy, tactics, or documents relating to discussions concerning bargaining.

Here, with respect to the Association's discovery request, in every provision of the five paragraphs asking for discovery, the word "all" is used. Because of its "all" inclusive nature, it should be denied outright by this court and the trial court should be reversed.

This will, however, not terminate the discovery problems before the Board. The majority refers to *Equal Employment Opportunity Com. v. University of Notre Dame Du Lac* (7th Cir. 1983), 715 F.2d 331, as the principal basis of the procedure to be followed. However, in *Equal Employment,* which created a qualified privilege for peer evaluations and faculty evaluations of nontenured teachers, only documents were subject to review in the employment discrimination case. Names and identifying characteristics of the evaluators were deleted from the documents. No procedure for examining witnesses was set forth.

Examining party witnesses without counsel presents a due process problem. The court is in effect conducting a discovery proceeding, the outcome of which could be determinative of the unfair labor practice charge and the enforcement proceeding pending before the court.

If a party has the means to employ counsel, he has the right to be represented by a lawyer of his own choosing. (*Zieger v. Manhattan Coffee Co.* (1983), 112 Ill. App. 3d 518, 527, 445 N.E.2d 844, 851.) The right of a litigant to be represented by counsel is fundamental. This right exists in civil as well as in criminal cases and is a part of the process of law guaranteed by the constitution. (*Magerstadt v. La Forge* (Mo. 1957), 303 S.W.2d 130, 133.) This right is a valuable one, the unwarranted denial of which is held to be a fundamental error.

The *in camera* interrogation of witnesses with questions formulated by opposing attorneys presents a grave danger of denying the party from whom discovery is sought fundamental safeguards insured by due process. Here, the witness would potentially be providing damaging information later usable in the underlying unfair labor practice proceeding. He would not have benefit of counsel as to the legal ramifications of statements made *in camera.*

There should be no *in camera* examination of witnesses without the benefit of counsel. As to witnesses, the usual rules followed in dispositions, interrogatories and offers of proof should apply.

Secondly, the procedure sets forth no guidelines as to what consti-

tutes a necessity for the information. The Association has not established a particularized need for the information but wishes the court to engage in a fishing expedition. Prior to the two-step procedure's being initiated, the discovery request must be specific in scope.

If specificity is not required, the policies set forth in the Illinois Educational Labor Relations Act will not be served. Settlement of labor disputes will not be encouraged because the courts will become involved as discovery mechanisms whenever unfair labor practice charges are brought. Additionally, the added procedure will be time consuming.

With respect to motions for discovery, closed session meetings, I suggest we adopt procedures for discovery as set forth in the FOIA. The procedure set forth in section 11, FOIA, should be followed with respect to the Association's request in the instant case. (Ill. Rev. Stat. 1985, ch. 116, par. 211.) The FOIA does not conflict with the Act. A request by the Association for specific discovery may very well be discoverable under the Educational Labor Relations Act and the Freedom of Information Act. To follow the procedures set forth in the Freedom of Information Act will provide guidance to an unbiased judge experienced in matters concerning evidence and litigation. A simple filing of a request pursuant to that act would permit the trial court to conduct an *in camera* examination of the request for records as it finds appropriate to determine if such records or any part thereof may be withheld under any provision of the FOIA. This of course would only apply when the request, made by either an employee, the certified bargaining representative of the employees, or the employer is appropriate, specific, and relevant to the controversy. Federal decisions certainly require such requests to be specific.

The Association argues that it feels the district is involved in unfair labor practice in that the district has made a decision not to settle the strike. If in fact this decision has been made, it is subject to discovery under the Freedom of Information Act and is appropriate in the instant case.

In summary, the Open Meetings Act with its exception for collective-bargaining negotiations, the passage of the Act, which specifically provides that the Open Meetings Act does not apply, and the availability of FOIA to both the employer and employees is adequate to indicate the legislative intent with respect to this matter. The motion for discovery in its present form should be denied. Any other motion for discovery should be specific.

This court should not find such authority in the agency or Board unless the statute under consideration confers it expressly or by un-

avoidable implication. The statute does not expressly confer the power sought to be exercised by the Board, the statutory reference to the Open Meetings Act and the implication of the application of the Freedom of Information Act do not justify a judicial determination that a power of such magnitude as requested by the teachers and ordered by the Educational Labor Relations Board should arise by implication.

This may very well hamper the Educational Labor Relations Board in the discharge of its function with the greatest effectiveness; however, that is a legislative consideration which this court should not be involved in.