**Matthew WILSTEIN, Plaintiff,**

v.

**SAN TROPAI CONDOMINIUM MASTER ASSOCIATION, San Tropai Building II Condominium Association, Robert Griggin, Robert Moshos, Kim En, Al Kaplan, James Dunning, Peter Kahn, and Creative Property Management Group, Inc., Defendants.**

No. 98 C 6211.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 7, 1999.

Mark Reinke, Stephen Vedova, Guth & Coughlin, Chicago, IL, for Master Association, Dunning, Griffin, Kahn and Creative Property Management, Inc.

Richard W. Hillsberg, Pamela Park, Kovitz, Shifrin & Waitzman, Buffalo Grove, IL, for Building II Association.

Phillip S. Makin, Chicago, IL, for Moshos.

Jeffrey L. Taren, Kinoy, Taren, Geraghty & Potter, P.C., Chicago, IL, for Plaintiff.

## *MEMORANDUM OPINION AND ORDER*

MORTON DENLOW, United States Magistrate Judge.

Plaintiff Matthew Wilstein ("Wilstein" or "Plaintiff"), moves this Court pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel Defendants San Tropai Condominium Master Association ("Master Association"), and San Tropai Building II Condominium Association ("Building II Association") (collectively referred to as "San Tropai" or "the Associations") to answer deposition questions regarding board meetings held in executive session. Plaintiff also moves this Court to compel the submission of handwriting exemplars of each San Tropai board member. For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion to compel the deposition testimony and grants the motion to compel the production of handwriting exemplars.

## I. BACKGROUND FACTS

Plaintiff Matthew Wilstein, a 31–year old disabled resident of San Tropai, has sought for several years to procure a handicapped parking space accessible to his condominium through administrative, and now legal channels. See *Wilstein v. San Tropai Condominium Master Assoc.*, 1999 WL 51805 (N.D.Ill.1999). Plaintiff has brought this action against the Master Association, the Building II Association, Creative Property Group, Inc., the property manager, and several San Tropai directors, individually, alleging that Defendants refused to provide accessible, handicapped parking in violation of the Fair Housing Amendments Act (the "Fair Housing Act"). 42 U.S.C. § 3601 et seq. Plaintiff amended his complaint to include claims that he has been the victim of retaliation and harassment as a result of his attempts to gain accessible parking.

In late 1996, Plaintiff requested a handicapped parking space readily accessible to his unit due to his deteriorating health. After the Master Association denied several requests for handicapped parking behind his building, Plaintiff initiated an administrative complaint with the Department of Housing & Urban Development ("HUD"). He later filed this lawsuit. After the initiation of legal action, Plaintiff allegedly began to suffer incidents of harassment and retaliation.

Plaintiff now seeks to depose the board members regarding closed door executive sessions. The Associations have refused to answer such questions, contending that this information is privileged under the open meetings provisions of the Illinois Condominium Properties Act, (the "Condominium Act") 765 ILL.COMP.STAT.ANN. 605/18(a)(9) and 605/18.5(c)(4). Furthermore, the Associations contend that such discussions are protected from disclosure by the attorney-client privilege and work-product doctrine.

Plaintiff also seeks to compel handwriting exemplars of San Tropai's current and for-

mer board members to discover the identity of those responsible for the incidents of harassment.

## II. ISSUES PRESENTED

Plaintiff's motion to compel raises the following issues: first, whether federal or state law governs the privilege questions; second, whether a blanket privilege applies to protect discussions held in a condominium board executive session; third, whether the attorney-client privilege applies to protect discussions held in a condominium board executive session; and finally, whether current condominium board members can be required to provide handwriting exemplars.

## III. MOTION TO COMPEL DISCOVERY

A party may file a motion to compel discovery under Rule 37 of the Federal Rules of Civil Procedure where another party fails to respond to a discovery request or where the party's response is evasive or incomplete. FED.R.CIV.P. 37(a)(2-3). The Federal Rules of Civil Procedure provide a court with broad discretion in resolving discovery disputes. *Bobkoski v. Bd. of Educ. of Cary Consol. Sch. Dist. 26,* 141 F.R.D. 88, 90 (N.D.Ill. 1992). A motion to compel discovery is granted or denied at the discretion of the trial court. *Community Sav. and Loan Ass'n v. Fed. Home Loan Bank Bd.,* 68 F.R.D. 378, 381 (E.D.Wis.1975). In ruling on motions to compel discovery, "courts have consistently adopted a liberal interpretation of the discovery rules." *Id.*

Under Rule 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery, or to the claim or defense of any other party ..." FED.R.CIV.P. 26(b)(1). A request for discovery "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *A.M. Int'l, Inc. v. Eastman Kodak Co.,* 100 F.R.D. 255, 257 (N.D.Ill.1981) *citing* 8 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL § 2008 (1970). Thus, courts commonly look unfavorably upon significant restrictions placed upon the discovery process. *Allendale Mut. Ins. Co. v. Bull Data Sys. Inc.,* 152 F.R.D. 132, 135 (N.D.Ill.1993). The burden rests upon the objecting party to show why a particular discovery request is improper. *EEOC v. Klockner H & K Machines, Inc.,* 168 F.R.D. 233, 235 (E.D.Wis.1996).

## IV. MOTION TO COMPEL DEPOSITION TESTIMONY REGARDING EXECUTIVE SESSION

### A. Federal Common Law Governs Privileges Asserted for Claims under Federal Law

Federal Rule of Evidence 501 provides that federal common law governs any privilege questions in this case. "[T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege ... shall be determined in accordance with State law." FED R. EVID. 501.

Whenever a principal claim in federal court arises under federal law, with pendent jurisdiction over a state claim, federal common law of privileges apply. In *Memorial Hospital For McHenry County v. Shadur,* 664 F.2d 1058, 1062 (7th Cir.1981), the plaintiff alleged violations of both federal and state antitrust laws. In declining to apply the Illinois privilege provided under the Illinois Medical Studies Act to the case, the Seventh Circuit reasoned, "The principal claim ... arises under ... a federal law. Because the state law does not supply the rule of decision as to this claim, the district court was not required to apply state law in determining whether the material sought ... is privileged. Instead, the question of whether the privilege asserted ... should be recognized" is governed by federal common law. Similarly, following the approach suggested by the Senate Judiciary Committee, the court in *Perrignon v. Bergen Brunswig*

*Corp.,* 77 F.R.D. 455, 459 (N.D.Cal.1978), held that "in federal question cases where pendent state claims are raised the federal common·law of privileges should govern all claims of privilege raised in the litigation."

■ The principal claim in this case arises under the Fair Housing Act, a federal law, with pendent state claims. Because state law does not supply the rule of decision as to the principal claim, this Court is not required to apply state law privileges. Thus, the Court must look to privileges recognized by federal common law.

## B. An Executive Session Privilege Does Not Apply Under Federal Common Law

### 1. Standard For Recognizing a Federal Common Law Privilege

■ In determining privileges pursuant to federal common law, the Court must first inquire whether or not there is an existing privilege. If so, that privilege will be applied. If not, the Court must then determine whether the federal common law should be expanded to include an asserted state law privilege. Therefore, the first issue is whether a federal common law privilege exempts closed-door executive session meetings from discovery. This Court finds none. Although a deliberative process privilege is recognized exempting from discovery opinions or recommendations made by government officials during the decision-making or policy-making process, no such privilege exists for private entities. *United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir.1993).

■ The Court must then inquire whether or not to expand the federal common law of privileges to encompass the asserted state executive session privilege. In *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the Supreme Court set forth the principles to consider in determining when "Rule 501 of the Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting 'common law privileges ... in the light of reason and experience.'" The Court noted that Rule 501 "did not freeze the law governing the privileges ... at a particular point in history, but

rather directed federal courts to 'continue the evolutionary development of testimonial privileges.'" *Id.,* 518 U.S. at 9, 116 S.Ct. at 1927–1928. The Court started with the basic rule that "there is a general duty to give what testimony one is capable of giving, and that any exemptions ... are distinctly exceptional" and "disfavored." *Id.* The Court then stated that for any privilege to be added to the federal common law, the privilege must "promote ... sufficiently important interests to outweigh the need for probative evidence." *Id.* The analysis must be made on a case-by-case basis, and take into account both the public and private interests that the privilege serves, as well as the evidentiary benefit that would result if the privilege was denied. *Id.,* 518 U.S. at 8, 11, 116 S.Ct. at 1927, 1929.

Thus, this Court will consider whether to recognize the asserted state law privilege as a matter of federal common law. In determining whether to recognize a state law privilege, the court must keep in ·mind that a " 'strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Memorial Hosp.,* 664 F.2d at 1061, *citing United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y. 1976). In *Memorial Hospital,* the Seventh Circuit relied upon an analysis similar to that of the Supreme Court in *Jaffee* to aid in the determination of whether a state law privilege should be recognized under Federal Rule of Evidence 501:

> First, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed. Second, in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case."

*Memorial Hosp.*, 664 F.2d at 1061–62 (citations omitted).

### 2. The Illinois Condominium Property Act Does Not Provide A State Privilege That Should Be Recognized by Federal Common Law

The Court finds that the Condominium Act does not provide a state executive meeting privilege. Furthermore, any interests that may be advanced by the asserted state executive meeting privilege are overcome by the need for probative evidence and are adequately protected by the attorney-client privilege.

San Tropai's assertion of an executive session privilege under The Illinois Condominium Property Act, 765 ILL. COMP. STAT. ANN. 605/18, (hereinafter "The Condominium Act") is misplaced for two reasons. First, The Condominium Act does not create a privilege from discovery. Second, such a privilege would not be recognized as a matter of federal common law.

The Condominium Act provides "that meetings of the board of managers shall be open to any unit owner, except for the portion of any meeting held … to discuss litigation when an action against or on behalf of the particular association has been filed and is pending in a court or administrative tribunal, or when the board of managers finds that such an action is probable or imminent." 765 ILL. COMP. STAT. ANN. 605/18.9. The Condominium Act makes no express mention of a privilege from discovery. Furthermore, the Condominium Act uses language almost identical to the Illinois Open Meetings Act, 5 ILL. COMP. STAT. ANN. 12½, to provide a duty to maintain open meetings. Both statutes clearly set forth instances where closed meetings are acceptable, however, neither statute expressly grants a privilege from discovery. *Ill. Educ. Labor Relations Bd. v. Homer Community Consol. Sch. Dist. No. 208*, 160 Ill.App.3d 730, 736, 112 Ill.Dec. 802, 806, 514 N.E.2d 465, 469 (1987).

The court in *Homer* elaborated upon the purpose of the Illinois Open Meetings Act and the Freedom of Information Act stating,

> [T]he purpose of those acts is to provide the general public with access to information previously unavailable. That same information was not unavailable to required disclosure for purposes of litigation unless it was subject to a privilege. The exceptions set forth in that legislation clearly appear to be exceptions to the newly created duty to disclose to the public. Information covered by those exceptions retains the same confidentiality that it had before enactment of the legislation. That confidentiality did not necessarily involve a privilege from required disclosure in litigation.

*Homer*, 160 Ill.App.3d at 736, 112 Ill.Dec. at 806, 514 N.E.2d at 469.

Thus, in creating limited exceptions to the duty of disclosure under the Open Meetings Act, the Freedom of Information Act, and the parallel provisions of the Condominium Property Act, "the legislature was balancing the need of the public to be informed against the need for confidentiality. The legislature was not balancing the need of litigants for information against the need for confidentiality." *Id.*

In this case, there is a substantial need for the disclosure of relevant evidence. The allegations that Wilstein makes are particularly disturbing. Wilstein, who is Jewish, claims that after he undertook legal efforts to obtain a handicapped parking space, he became the subject of vicious and anti-Semitic harassment. The repeated actions of harassment have included puncturing Wilstein's tire on his auto, strewing feces and garbage on his car, defacing his handicap parking sign, smashing the windshield of his car, leaving a Semitic plastic nose on his door, placing a Nazi swastika on his car, urinating on his door, placing pornography on his door, vandalizing his car, and posting handwritten notes around the condominium complex that harassed Wilstein by name.

In addition, in order to pursue a claim for violation of the Fair Housing Act, Wilstein must know at least the motive and basis for San Tropai's decision to deny his parking request. The testimony of San Tropai's board members as to discussions held in executive session will likely aid in uncovering the facts relied upon by the board to make

the decision not to comply with Wilstein's request. Furthermore, there is no compelling policy interest to justify protecting all communications in executive session meetings. As hereinafter discussed, the attorney-client privilege provides adequate protection. Thus, this Court refuses to extend federal common law to encompass an executive session privilege.

### C. The Attorney–Client Privilege Limits Appropriate Deposition Testimony

#### 1. Confidential Communications Between Attorney and Client Are Protected.

The next issue is to what extent the attorney-client privilege protects from discovery the statements made by board members meeting in executive session to discuss their attorney's letter regarding pending litigation. The Court concludes that a blanket privilege does not arise. To the extent testimony of the condominium board members would reveal litigation strategy or confidential information communicated between the board and its attorney, the attorney-client privilege does apply.

Federal common law recognizes the attorney-client privilege. *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* "The privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* 449 U.S. at 390, 101 S.Ct. at 683. The privilege recognizes that sound legal advice depends upon the lawyer's being fully informed by the client. *Id.* 449 U.S. at 389, 101 S.Ct. at 682.

The Seventh Circuit has "long embraced the articulation of the attorney-client privilege first set forth by Dean Wigmore" in 1904. *United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir.1997). The essential general principles governing the privilege are as follows:

(1)Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

8 John Henry Wigmore, EVIDENCE IN TRIALS AT COMMON LAW § 2292 (John T. McNaughton rev.1961).

 The party claiming the privilege bears the burden of proving all of its essential elements. *United States v. White,* 950 F.2d 426, 430 (7th Cir.1991). "Since the privilege has the effect of withholding relevant information from the fact finder, it applies only where necessary to achieve its purpose." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). Thus, "a blanket claim of privilege that does not specify what information is protected will not suffice." *United States v. White,* 970 F.2d 328, 334 (7th Cir.1992).

#### 2. The Underlying Facts of the Dispute Discussed by Members of the Condominium Board in Executive Session Are Discoverable

 The attorney-client privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney. *Upjohn,* 449 U.S. at 395–396, 101 S.Ct. at 685–686.

A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Id.* (quoting *Philadelphia v. Westinghouse Elec. Corp.,* 205 F.Supp. 830, 831 (E.D.Pa. 1962)).

In *Larson v. Harrington,* 11 F.Supp.2d 1198 (E.D.Cal.1998), the plaintiff moved to

compel the deposition testimony of county board members regarding discussions held in closed session. The defendant objected to questions pertaining to the closed session on the ground that the county counsel was present at the meetings and at each meeting "provided legal advice and counseling" to the board. *Id.* at 1200. The court found that even if confidential communications within the purview of the attorney-client privilege were made at the closed meetings, such communications would not "cloak the entire proceeding in secrecy." *Id.* at 1201. Discussions which did not implicate legal advice relating to pending or anticipated litigations were not privileged from discovery. *Id.*

### 3. Discussion of Legal Advice Provided by Counsel Regarding Pending or Anticipated Litigation is Privileged From Discovery.

Communications from an attorney to a client are privileged if the statements reveal, directly or indirectly, the substance of a confidential communication by the client. *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21, 28 (N.D.Ill.1980). The privilege extends to situations where an attorney is giving advice concerning the legal implications of conduct, whether past or proposed. *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 136 (D.C.Del.1977). The mere attendance of an attorney at a meeting, however, does not render everything said or done at that meeting privileged. *Great Plains Mutual Ins. Co. v. Mutual Reinsurance Bureau,* 150 F.R.D. 193, 197 (D.Kan.1993). For communications at such meetings to be privileged, they must have related to the acquisition or rendition of professional legal services. *Id.* The party seeking to assert the privilege must show that the particular communication was part of a request for advice or part of the advice, and that the communication was intended to be and was kept confidential. *Id.*

Similarly, "[a] privileged communication does not lose its status as such when an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation. Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation." *Weeks v. Samsung Heavy Ind. Co., Ltd.,* 1996 WL 341537 at *4 (N.D.Ill. June 20, 1996). However, while discussions between executives of legal advice should be privileged, conversations between executives about company business policies and evaluations are not. *SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508, 518 (D.Conn.1976). "When the ultimate corporate decision is based on both a business policy and a legal evaluation, the business aspects of the decision are not protected [merely] because legal consideration are also involved." *Id.*

In *Great Plains,* the court denied the defendant's request for production of the minutes of a corporate board meeting when it found that the information sought by the plaintiff directly related "to legal advice rendered by its attorney in his capacity as legal advisor." *Great Plains,* 150 F.R.D. at 197. While the court recognized that the presence of an attorney at a board meeting would not shield the entire meeting from disclosure, it was "clear from the minutes of the board meetings that the purpose of the conversations during the board meetings was to render legal advice." *Id.* Furthermore, both the plaintiff and its attorney understood that the purpose of the communications was to review and consider legal issues pertaining to pending litigation. *Id.* Thus, because the attorney was "acting in his capacity as an attorney during the relevant portions of the board meetings," and giving advice requiring "the skill and expertise of an attorney," these portions of the board meetings were protected from discovery. *Id.*

In *Weeks,* an executive employee summarized legal advice given by counsel regarding legal obligations and potential litigation risks regarding the suit at hand and relayed the information to his superior. *Weeks,* at *3. The summary memo was held to be protected from discovery under the attorney-client privilege. *Id.* at *4.

Thus, discussions by members of the San Tropai board encompassing business strategy and decision-making are not privileged, regardless of whether or not the business decisions may have a legal impact on San Tropai. However, conversations among the

board members discussing their attorney's legal advice about potential litigation risk and legal strategy are privileged under the attorney-client privilege.

### 4. Unprotected Executive Session Discussion Requires Response

 In this case, the attorney-client privilege does not provide blanket protection from discovery. Only the relevant portions of the executive session meeting discussing confidential information disclosed to the attorney or advice from the attorney relating to pending or anticipated litigation are privileged from discovery. Questions pertaining to factual information underlying Wilstein's claim or information not involving counsel's legal advice must be answered. As an example, questions that do not violate the attorney-client privilege might include:

> What topics were discussed in executive session? Why was Mr. Wilstein denied a handicapped parking space? What factual information did the association consider? What parking alternatives, if any, did the association consider? Did any Board member reveal any personal animus toward Mr. Wilstein? How did the Board vote? Were any members in favor of granting Mr. Wilstein a parking space? What business and economic factors did the board consider in its decision to deny a parking space to Mr. Wilstein?

These questions relate to the underlying facts and therefore do not infringe upon the attorney-client privilege.

Examples of impermissible questions might include:

> What was discussed regarding counsel's advice? What course of action did counsel recommend? What litigation strategy did counsel propose? Did counsel inform the board of potential litigation risks? What legal obligations did counsel inform the board of?

It is, of course, impossible to provide a fully comprehensive list of both permissible and objectionable questions. The foregoing guidelines should aid all parties to complete discovery.

### 5. The Attorney Client Privilege is Not Waived

 San Tropai has not waived its attorney-client privilege by providing minutes of general board meetings to Wilstein, despite Wilstein's claims to the contrary. If a client chooses to divulge a conversation with his attorney to a third party, that conversation may no longer be privileged, however, the privilege is not waived for all time as it relates to future conversations. Similarly, because San Tropai's board made voluntary disclosures of the minutes of their board meetings discussing legal advice, thus waiving the attorney client privilege for those communications, this does not indicate a waiver of the privilege for all future board meetings.[1]

In this case, the minutes of the board meetings that were disclosed were prior to the initiation of a legal suit by Wilstein on October 5, 1998. The filing of a lawsuit against a defendant certainly changes the legal landscape, therefore, any previous disclosure will not be considered a waiver as to future board meetings.

*Chinnici v. Central DuPage Hosp. Assoc.*, 136 F.R.D. 464 (N.D.Ill.1991), upon which Plaintiff relies, is distinguishable. In that case, the court held that a memo from a condominium association president to "All Condominium Owner" was discoverable after the board had already disclosed minutes from a board meeting, including the contents of a discussion with the condominium association's counsel. The contents of the memo to the condominium owners appeared to be substantially the same as the contents of the minutes of that particular board meeting, in that it discussed the legal advice given by the

---

1. San Tropai took the position in oral argument that they are not relying upon an advice of counsel defense. In the event such defense is raised, the attorney-client privilege is waived. "Where ... a party asserts as an essential element of his defense reliance upon advice of counsel, ... the party waives the attorney-client privilege with respect to all communications, whether written or oral, to or from counsel concerning the transactions for which counsel's advice was sought." *Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 721 (N.D.Ill.1978); *see also Johnson v. Rauland-Borg Corp.*, 961 F.Supp. 208, 211 (N.D.Ill.1997).

condominium association's attorney, and then asked the owners for their opinion of what action the board should take. The holding in that case should be narrowly construed to instances where a memorandum refers to a privileged document in which the privilege was previously waived. The court did not hold that all future board meetings or all future memoranda are discoverable, as Plaintiff wishes to assert.

## V. HANDWRITING EXEMPLARS ARE DISCOVERABLE

### A. Handwriting Exemplars Are Relevant And May Lead To The Discovery Of Admissible Evidence

The final issue is whether current board members can be required to provide handwriting exemplars. Federal Rule of Civil Procedure 34(a) allows a party "to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served." FED.R.CIV.P. 34(a). Under Federal Rule of Civil Procedure 26(b)(1), "The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1).

Wilstein seeks the production of handwriting exemplars of the San Tropai Board members to discover the individual or individuals responsible for the harassment that he has suffered after initiating legal action against San Tropai. Wilstein seeks this information in support of his claim for retaliation, intimidation and maintenance of a hostile environment in violation of the Fair Housing Act.

In support of his motion to compel the production of handwriting exemplars, Wilstein offers several pieces of evidence which lead him to believe that at least one board member is responsible for this harassment and retaliation. First, Plaintiff presents as exhibits several harassing notes posted on the common information board of the San Tropai Condominiums. Several notes are anti-Semitic in nature, and each note contains a hand printed word or phrase. For exam-

ple, on a business card for a Jewish kosher bakery, the handwriting reads, "call M. Wilstein For Cheap Prices." Another hand printed signs say "Need a Lawyer See Wilstein." Wilstein's name was also hand printed on posted handicapped parking signs and reminders to residents to not abuse handicapped parking spaces. Plaintiff also alleges particularly vicious and ongoing acts of harassment, as previously discussed. Plaintiff feels that a comparison of the printing on each note with that of the members of the condominium board will clearly implicate the culprit and aid in the proof that the condominium board itself was responsible for retaliation and promotion of a hostile environment in violation of the Fair Housing Act.

Second, Plaintiff is in the possession of a magazine subscription card fraudulently completed in handwriting, registering him for a subscription to a mature woman's magazine. Through a third-party subpoena of magazine subscription records, Plaintiff has learned that of four households in the San Tropai Condominiums who subscribed in September of 1998 to the magazine fraudulently ordered under the Plaintiff's name, one is a member of the Master Association.

Third, there is a clear temporal relation between the initiation of legal action by Wilstein and the harassing notes. The harassment started shortly after Wilstein's filing of this lawsuit, which would presumably be more well known by board members than by the average condominium unit owner or passerby.

Finally, Wilstein claims that a harassing note was found in a restricted area of the condominium accessible only to San Tropai board members. Thus, the possibility that a member of the condominium board is involved is even more likely.

In light of the handwritten exhibits presented by Plaintiff in support of his claim for retaliation and harassment and the temporal relation of the harassing notes to Plaintiff's initiation of legal action against the Condominium Associations, the submission of handwriting exemplars is relevant and may lead to the discovery of admissible evidence.

## B. Individual Board Members Can Be Compelled To Provide Handwriting Exemplars Analysis

██ San Tropai contends that a request for handwriting exemplars cannot apply to a corporation or association because only named parties to a suit can properly be required to submit handwriting exemplars. On the contrary, it is clear from the Federal Rules of Civil Procedure that current officers, directors, and agents of a corporation are subject to reasonable discovery requests when the corporate entity is named as a defendant. Federal Rule of Civil Procedure 30(b)(6) explicitly directs a named corporation or association party to "designate one or more officers, directors, or managing agents" to be deposed by the opposing party. FED. R.CIV.P. 30(b)(6). Furthermore, Federal Rule of Civil Procedure 32(a)(2) provides that "the deposition of . . . anyone who at the time of taking the deposition was an officer, director or managing agent . . . of a . . . private corporation . . . or association . . . which is a party may be used by an adverse party for any purpose." FED.R.CIV.P. 32(a)(2). This "is appropriate, since the deposition is in substance and effect that of the corporation or other organization which is a party." FED.R.CIV.P. 32 advisory committee's notes. Both of these provisions clearly indicate that officers, agents, and directors of a corporation or association are subject to reasonable discovery requests.

Indeed, even witnesses who are no longer parties to a litigation may be compelled to produce handwriting exemplars. *U.S. v. Jackman*, 1997 WL 161948 (D.Kan. Mar. 28, 1997). Therefore, defendant's argument is unsubstantiated.

## C. Handwriting Exemplars Will Be Required

██ San Tropai contends that volunteer members of a non-profit association should not be required, in a civil suit, to supply a handwritten exemplar. San Tropai's contention, however, holds no merit. Handwriting exemplars are within the scope of Rule 26(b) as long as they are relevant to the claims asserted and reasonably calculated to lead to admissible evidence. FED.R.CIV.P. 26(b).

For purposes of discovery, "it is difficult to imagine any document or thing which could not be ordered produced under appropriate circumstances." 4A MOORE'S FEDERAL PRACTICE, § 34.09 (1983). As that treatise notes, even dead bodies can be ordered produced. *Id.* citing *Zalatuka v. Metropolitan Life Ins. Co.*, 108 F.2d 405 (7th Cir.1939).

In civil cases, the courts have required that handwriting exemplars be produced. In *Kalfas v. E.F. Hutton & Co., Inc.*, 1987 WL 10831 (E.D.N.Y. Apr. 30, 1987), the court compelled handwriting exemplars and known samples of existing handwriting where plaintiff challenged the authenticity of her signature on a customer investment account in an action claiming violations of the Securities and Exchange Act.

Similarly, at least one court has granted a motion to compel fingerprints in a civil case, a production request analogous to the present request. In *Alford v. Northeast Ins. Co., Inc.*, 102 F.R.D. 99 (N.D.Fla.1984) the court granted the defendant's motion to compel the production of fingerprints from the plaintiff in support of its affirmative defense that the plaintiff was responsible for the fire damage he was claiming. The Court found the request to be relevant to the action, and reasonable under the broad principles of discovery outlined by the Federal Rules of Civil Procedure. *Id.* at 101.

Furthermore, requests for the production of handwriting exemplars are routinely granted in criminal trials where a request to produce handwriting exemplars requires a heightened level of scrutiny. In the context of a criminal trial, handwriting exemplars, like the voice or body itself, are identifying physical characteristics outside the Fifth Amendment's protection. *Gilbert v. California*, 388 U.S. 263, 266–267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178, (1967). Furthermore, a contention that handwritten exemplars violate Fourth Amendment protections is also untenable, as a person has no reasonable expectation of privacy regarding his handwriting. *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). Finally, courts have noted that the compelled display of identifiable physical characteristics infringes no interest protected by the privilege

against compulsory self-incrimination. *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

Because of the lower level of scrutiny required in a civil case, and based on the evidence Wilstein has set forth in support of his claim against San Tropai for creation of a hostile housing environment and retaliation in violation of the Fair Housing Act, this Court concludes that an analysis and comparison of handwriting exemplars of current members of the Associations are relevant. Furthermore, Wilstein's request is reasonably calculated to lead to admissible evidence, and is thereby granted.

### D. Procedures For Taking Exemplars

In order for the taking of handwriting exemplars to be of use in this case, it will be necessary that several procedural requirements be met. First a handwriting expert must design the procedure for taking and comparing the handwriting exemplars. Second, the analysis of the exemplars must be made available to both parties. Finally, the handwriting exemplars should be taken once, preferably at the depositions of the board members.

### VI. CONCLUSION

For the foregoing reasons, the **Court grants in part and denies in part Plaintiff's motion to compel the deposition testimony of San Tropai Condominium Master Association and Building II Association, and grants Plaintiff's motion to compel production of handwriting exemplars from current Board members of San Tropai Condominium Master Association and Building II Association.**