THE PEOPLE *ex rel.* JOSEPH E. BIRKETT, State's Attorney of Du Page County, *et al.*, Plaintiffs-Appellees, v. THE CITY OF CHICAGO, Defendant-Appellant.

Second District    No. 2—96—1319

Opinion filed October 17, 1997.

Susan S. Sher, Corporation Counsel (Patricia T. Bergeson, Lawrence Rosenthal, Benna Ruth Solomon, and Timothy W. Joranko, Assistant Corporation Counsel, of counsel), and Anton R. Valukas, William D. Heinz,

and Dean N. Panos, all of Jenner & Block, both of Chicago, and Joseph M. Laraia, of Laraia & Hubbard, P.C., of Wheaton, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Nancy J. Wolfe, Assistant State's Attorney, of counsel), and Joseph V. Karaganis, A. Bruce White, and John W. Kalich, all of Karaganis & White, Ltd., of Chicago, for appellees.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, of counsel), for *amicus curiae.*

JUSTICE DOYLE delivered the opinion of the court:

Defendant, the City of Chicago (the City), appeals from the trial court's order holding it in contempt for refusing to produce to plaintiffs, the People of the State of Illinois by State's Attorney Joseph E. Birkett; the County of Du Page; the Village of Bensenville; the City of Elmhurst; and the City of Wood Dale, documents that the City alleges were protected from disclosure by the governmental "deliberative process privilege." The City also appeals from the court's order authorizing counsel for plaintiffs to view the documents that the City claims are privileged.

The pleadings allege the following facts. The communities of Bensenville, Elmhurst, and Wood Dale, as well as portions of Du Page County not incorporated within any municipality, are located in close physical proximity to O'Hare International Airport (O'Hare), which the City of Chicago owns and controls. Flights to and from the airport create severe noise, air pollution, and safety concerns among plaintiffs' citizens.

In their amended complaint, plaintiffs asserted that the City had constructed and planned to build several hundred million dollars of construction projects at O'Hare without obtaining a certificate of approval from the Illinois Department of Transportation as required under section 47 of the Illinois Aeronautics Act (620 ILCS 5/47 (West 1994)). Plaintiffs further asserted that the intended purpose of the construction at O'Hare was to expand incrementally the capacity of the airport to allow more flight operations to land and take off at O'Hare thereby causing communities under the flight paths to suffer greater frequency and intensity of noise and air pollution. Plaintiffs sought an order prohibiting the City from continued construction of current and proposed elements of the City's piecemeal expansion program until the City obtained the required certificate of approval from the Illinois Department of Transportation.

On February 2, 1996, plaintiffs requested the City to produce all documents relating to plans or discussions of past, present, and

proposed alterations, modifications, and construction at O'Hare. The City objected to plaintiffs' requests citing, *inter alia*, a deliberative process privilege. Plaintiffs filed a motion to compel, asserting that the City had failed to identify in its objections which documents were allegedly covered by the privilege. Plaintiffs claimed that they had offered to agree to the entry of a protective order to protect any documents as to which a deliberative process privilege was properly invoked and to refrain from disclosing the documents for any purpose outside the litigation, but the City had declined the offer.

In its response to plaintiffs' motion to compel, the City stated that plaintiffs' offer to enter into a protective order overlooked the total irrelevance of the documents sought. Also, such an order would effectively undermine the ability of city officials to engage in discussions and deliberations in a direct, candid, and confidential manner, free from outside intrusions. The City asserted that it was not claiming the deliberative process privilege with regard to any final actions for any past or present construction projects but only as to those documents which related to discussions, plans, opinions, or forecasts for the future.

Plaintiffs replied to the City's response, pointing out that no Illinois court had yet recognized the deliberative process privilege and that, even if recognized in Illinois, the City had not properly raised the privilege. Also, plaintiffs stated, the City sought to withhold broad categories of documents, none of which had been identified.

Following a hearing conducted on May 20, 1996, the trial court granted plaintiffs' motion to compel. The court ordered the City to produce promptly the documents sought in plaintiffs' request. In so ruling, the court expressed its reluctance to find that a deliberative process privilege existed in this particular case, "if indeed one exists at all," as the documents requested appeared to have been disclosed to third parties. The court ordered that if the City wished to withhold any documents, which had not been disclosed to anyone who was not a city employee, those documents could be produced to court *in camera* with a privilege log, asserting recognized privileges.

On June 28, 1996, the City filed a motion for clarification and reconsideration of the court's May 20 order. The City interpreted the court's order as allowing it to assert the deliberative process privilege. Plaintiffs interpreted the order as not recognizing the privilege and that the City must produce all documents requested by plaintiffs except those protected by some other recognized privilege. The City requested the court to enter a protective order providing that the City may designate certain documents it produces as "Confidential" and limit their use and disclosure to the litigation.

On July 2, 1996, the trial court denied the City's motion to reconsider, finding the deliberative process privilege is not recognized in Illinois. Additionally, the court ordered the City to produce documents previously withheld from plaintiffs under the claimed deliberative process privilege. The court granted the City leave to file logs listing all documents marked "Deliberative Process Privilege" along with the corresponding documents. These documents would be kept under seal by the court. The court also ordered the parties to submit to a protective order relating to all documents marked "Confidential" and limiting the disclosure of these documents.

On July 30, 1996, the court entered the protective order contemplated by its July 2 ruling. The order provided that the alleged deliberative process documents as well as documents containing commercial airlines' confidential business information were to be used solely for purposes of the litigation. These documents would be disclosed to only one representative of each plaintiff, to plaintiffs' attorneys, and to persons retained by plaintiffs or their counsel to assist in the litigation, such as experts. During the hearing at which the court entered the protective order, the City informed the court that it intended to withhold the alleged deliberative process documents from plaintiffs' viewing until the appellate court reviewed the City's privilege claim, proposing thereby that the court hold the City in contempt if the City carried out its intention.

At a status hearing on October 21, 1996, the parties addressed the City's proposed contempt citation. The court ruled that all of the deliberative process documents should be released to plaintiffs subject to the protective order, stating that such an order would be immediately appealable upon the City's failure to comply with it. The court recognized that the deliberative process privilege was an important issue.

On November 1, 1996, the City moved for the entry of a contempt order. On November 4, 1996, the court found the City in contempt for its failure to produce to plaintiffs certain documents sought by them in discovery which the City claimed were not subject to discovery under a deliberative process privilege. Prior to the entry of its contempt order, the court stated that it had ruled four times that there was no deliberative process privilege in Illinois and that the City's raising of the issue so many times before the court demonstrated that it was "essentially stonewalling." The court fined the City $100 per day for each day after October 21, 1996, that the City failed to produce the documents. The trial court also ordered that plaintiffs be given access, under court supervision, to those documents filed by the City under seal with the court which the City

claimed were protected from disclosure by the deliberative process privilege.

On November 7, 1996, the City filed a notice of appeal pursuant to Supreme Court Rule 304(b)(5) (155 Ill. 2d R. 304(b)(5)).

On appeal, the City contends that (1) the trial court erred in ordering the City to produce documents that revealed the City's predecisional deliberative analyses and opinions concerning potential plans and policies for O'Hare, as such documents were protected from discovery by the deliberative process privilege; (2) the contempt fines imposed by the trial court should be vacated, as the City willingly submitted to a contempt order so as to allow a reviewing court to resolve the City's privilege claim; and (3) the trial court's access order, allowing plaintiffs' counsel to view the documents the City claimed were privileged, was unlawful.

We note, first, that we have granted the Illinois Attorney General leave to file a brief as *amicus curiae* in this court. The Attorney General urges this court to recognize the existence of the deliberative process privilege in Illinois.

The City first contends that the trial court erred in ordering it to produce documents that revealed the City's predecisional deliberative analyses and opinions concerning potential plans and policies for O'Hare, as such documents were protected from discovery by the deliberative process privilege. The City admits that the deliberative process issue appears to be one of first impression, as no published decision in the Illinois courts has addressed the privilege, but urges this court to create this privilege judicially as a matter of common law. The City asserts that the law governing privileges in Illinois, together with the policies that have caused the privilege to be recognized by some state and federal courts, by Congress in the federal Freedom of Information Act (federal Act) (5 U.S.C. § 552 (1994)), and by our own General Assembly in Illinois' Freedom of Information Act (state Act) (5 ILCS 140/1 *et seq.* (West 1994)), "dictate that Illinois courts should recognize this privilege."

■ Privileges are strongly disfavored because they are in derogation of the search for truth (*United States v. Nixon*, 418 U.S. 683, 710, 41 L. Ed. 2d 1039, 1065, 94 S. Ct. 3090, 3108-09 (1974)) and must be strictly construed as an exception to the general duty to disclose (*Martinez v. Pfizer Laboratories Division*, 216 Ill. App. 3d 360, 367 (1991)). The deliberative process privilege, also known as the "executive," "governmental," "official information," or "intragovernmental opinion" privilege (*Bobkoski v. Board of Education of Cary Consolidated School District 26*, 141 F.R.D. 88, 91 (N.D. Ill. 1992)), protects from disclosure communications that are a part of the decision-

making process of a governmental agency (*United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993)). The primary rationale for the privilege is that effective and efficient governmental decision making requires a free flow of ideas among governmental officials and that inhibitions will result if officials know that their communications may be revealed to outsiders. *Bobkoski*, 141 F.R.D. at 91. It is these inhibitions or "chilling effects" on intragovernmental communications that advocates of the deliberative process privilege rely on in arguing that the failure to recognize such a privilege will prove detrimental to the policy-making process and, ultimately, to the public interests. However, our research reveals that those cases relying on this inhibition argument base the argument on speculation or conjecture as to the harms that may result from the judiciary's failure to recognize the privilege. The argument is unsupported by any empirical evidence that any real harm has accrued from the absence of the privilege. See, *e.g.*, *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993); *In re Franklin National Bank Securities Litigation*, 478 F. Supp. 577, 581 (E.D.N.Y. 1979); *Babets v. Secretary of the Executive Office of Human Services*, 403 Mass. 230, 238, 526 N.E.2d 1261, 1266 (1988). In most instances, the privilege appears to have been addressed in a superficial manner and, where applied, to have escaped careful scrutiny.

As a result, we find more persuasive those cases that have been reluctant to create such a privilege as a matter of common law, stating that the creation of such a privilege is better left to the legislature. See, *e.g.*, *Babets*, 403 Mass. at 234, 526 N.E.2d at 1264 (creation of such privileges is better left to "legislative determination"); *News & Observer Publishing Co. v. Poole*, 330 N.C. 465, 484, 412 S.E.2d 7, 18 (1992) (whether deliberative process privilege exception "should be made is a question for the legislature, not the Court"); *Commonwealth of Pennsylvania Department of Environmental Resources v. Texas Eastern Transmission Corp.*, 130 Pa. Commw. 655, 659, 569 A.2d 382, 384 (1990) (the "appropriate course may be to defer the development of a deliberative process privilege to the General Assembly, which *** has created other statutory privileges deemed to be necessary in the Commonwealth"). Indeed, the source of all privileges pertaining to communications in Illinois, with the exception of the attorney-client privilege, has been statutory. See, *e.g.*, 735 ILCS 5/8—803 (West 1994) (clergy communications); 225 ILCS 450/27 (West 1994) (accountant communications); 735 ILCS 5/8—802 (West 1994) (physician-patient communications); 725 ILCS 125/6 (West 1994) (interspousal communication in criminal cases). Our courts have been reluctant to expand or create such privileges.

In *People v. Sanders*, 99 Ill. 2d 262 (1983), our supreme court refused to expand judicially the statutory privilege in criminal cases for interspousal communications to include communications between parents and children, stating that the expansion of existing testimonial privileges and the acceptance of new ones should be left to the legislature rather than the courts. The supreme court said:

"[W]hile courts, as institutions, find it easy to perceive value in public policies such as those favoring the admission of all relevant and reliable evidence which directly assist the judicial function of ascertaining the truth, it is not their primary function to promote policies aimed at broader social goals more distantly related to the judiciary. This is primarily the responsibility of the legislature. To the extent that such policies conflict with truthseeking or other values central to the judicial task, the balance that courts draw might not reflect the choice the legislature would make." 99 Ill. 2d at 271.

Here, as in *Sanders*, we believe the particular privilege sought is the responsibility of the legislature. Thus far, however, the legislature has not deemed it essential to create a privilege for communications pertaining to the decision-making processes of governing bodies.

Nonetheless, the City argues that, through the adoption of the federal Freedom of Information Act and the Illinois Freedom of Information Act, Congress and our General Assembly have acknowledged the deliberative process privilege. Both exemption 5 of the federal Act (5 U.S.C. § 552(b)(5) (1994)) and section 7(1)(f) of the state Act (5 ILCS 140/7(1)(f) (West 1994)) pertain to disclosure exemptions. In particular, section 7(1)(f) of the state Act provides that "[p]reliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated" shall be protected from disclosure. 5 ILCS 140/7(1)(f) (West 1994). Implicit in the City's argument is the assumption that information exempt from disclosure to the general public under either the federal Act or the state Act is privileged and thus not discoverable by a civil litigant. In other words, if a document would qualify for exemption under either act, then it must be privileged. As one court has said in addressing this same argument as it pertained to exemption 5 of the federal Act:

"This argument stands the law on its head. [Citation.] It transforms the exemption of the [Freedom of Information] Act into a testimonial privilege." *Pierson v. United States*, 428 F. Supp. 384, 394 (D. Del. 1977).

We find this statement equally applicable to the City's argument.

We agree with plaintiffs that the documents set forth in section 7(1)(f) of the Illinois Freedom of Information Act are "protected from

a request by a citizen walking in off the street without any pending litigation." The section does not create a privilege to withhold relevant documents from judicial discovery in a court action.

"[T]he FOIA-[Freedom of Information Act-]type of legislation deals with disclosure to the public generally, not disclosure in response to discovery in litigation. The FOIA does not create an evidentiary privilege. [Citations.] Thus, the mere existence of exceptions to the FOIA is not *dispositive* of a discovery request." (Emphasis in original.) *In re Marriage of Daniels*, 240 Ill. App. 3d 314, 326 (1992).

We find unpersuasive two federal district cases, cited by the City, as proof that, although neither our state courts nor our state legislature has addressed the issue of the deliberative process privilege, the emerging policy in Illinois is to recognize the privilege and apply it to state or local governmental agencies. In *Bobkoski v. Board of Education of Cary Consolidated School District 26*, 141 F.R.D. 88 (N.D. Ill. 1992), the federal district court relied strictly on an earlier decision in *Moorhead v. Lane*, 125 F.R.D. 680 (C.D. Ill. 1989), to reach its conclusion that recognizing a deliberative process privilege was consistent with Illinois' emerging policy of protecting governmental deliberative materials. *Bobkoski*, 141 F.R.D. at 92. In *Moorhead* the court based its interpretation of Illinois' policy on section 5—10 of the Illinois Administrative Procedure Act (5 ILCS 100/5—10 (West 1994) and on section 7(1)(f) of the Illinois Freedom of Information Act (5 ILCS 140/7(1)(f) (West 1994)). The court determined that, because these acts indicated that predecisional materials were exempt from public inspection, the acts expressed the general policy of Illinois regarding such materials. *Moorhead*, 125 F.R.D. at 683. Before reaching this conclusion, however, the *Moorhead* court recognized that neither act addressed discovery and litigation.

The *Moorhead* court reached its decision that Illinois would recognize a deliberative process privilege based, in large part, on one Illinois case (*Illinois Educational Labor Relations Board v. Homer Community Consolidated School District No. 208*, 160 Ill. App. 3d 730 (1987)). In *Homer*, the fourth district interpreted the Illinois Open Meetings Act (Ill. Rev. Stat. 1985, ch. 102, par. 42 (now 5 ILCS 120/2 (West 1994))) and sections 3 and 7(1)(f) of the Illinois Freedom of Information Act (Ill. Rev. Stat. 1985, ch. 116, pars. 203, 207(f) (now 5 ILCS 140/3, 7(1)(f) (West 1994))) to decide whether a qualified privilege should be recognized for a school district's deliberations during a labor dispute. The teacher's union maintained the employer school district had not bargained in good faith and sought to discover notes and minutes of closed sessions when the school district's bargaining

strategy was being discussed. The court recognized that the Open Meetings Act and the Illinois Freedom of Information Act did not speak to the question as to whether deliberations of protected meetings where collective bargaining was discussed were immune from discovery for litigation purposes, but considered the legislation to have indicated a strong public policy to protect the confidentiality of such deliberations. *Homer*, 160 Ill. App. 3d at 737. Although reluctant to recognize the common-law privilege which would give protection to the parties from discovery as to their deliberations over bargaining strategy, the court invoked a qualified privilege that could be applied to balance the interests in finding the truth with the need of a party to be able to plan negotiating strategy with a reasonable expectation that it would not have to reveal that strategy to its opponents. 160 Ill. App. 3d at 737-38.

We agree with plaintiffs in the present case that the *Homer* court was not recognizing a governmental privilege but rather a labor negotiations privilege applicable in that particular case to a union and a nongovernmental employer and based on the confidentiality of the information sought. "While confidentiality of information may be sufficient ground for non-disclosure under the [Freedom of Information] Act, 'under the Rules [of Civil Procedure] there is no general principle that makes information otherwise discoverable privileged because it was given in confidence.' " *Pleasant Hill Bank v. United States,* 58 F.R.D. 97, 100 (W.D. Mo. 1973), quoting J. Moore, Federal Practice & Procedure § 26.61[4.—3], at 26—176 (1972). Although referring to the federal Freedom of Information Act and the federal rules of civil procedure, we believe this statement by the federal district court in *Pleasant Hill Bank* is equally applicable to our state Freedom of Information Act and rules of civil procedure.

We are not persuaded by the *Moorhead* court's decision that a general policy exists in Illinois against requiring the disclosure of predecisional materials. We do find it significant, however, that the *Moorhead* court specifically recognized that the deliberative process privilege would not bar discovery of documents that shed light on government malfeasance. *Moorhead*, 125 F.R.D. at 685; see also *In re Franklin National Bank Securities Litigation*, 478 F. Supp. 577, 582 (E.D.N.Y. 1979). In the present case, plaintiffs sought documents that they believed would shed light on the City's unlawful construction of major alterations to O'Hare, and, thus, under *Moorhead*, if we recognized that the deliberative process privilege existed in this state, the documents would still be discoverable and not protected by the privilege.

Parenthetically, we note that the decision of the appellate court

of any district is not binding on other appellate districts. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539 (1992). Additionally, the decisions of the United States District Court are not binding upon the state courts and are held to no more than persuasive authority. *People v. Qualls*, 233 Ill. App. 3d 394, 397 (1992). Accordingly, neither the fourth district's decision in *Homer* nor the federal district courts' decisions in *Moorhead* and *Bobkoski* constitute binding authority for the proposition that the trend in Illinois is to create judicially a deliberative process privilege. However, we do not believe such a trend is occurring, and, as stated above, we believe the question of the creation of such a privilege is best left to the legislature of this state.

While of no precedential value, we find persuasive a legal periodical article, cited by the plaintiffs, dealing with objections to the deliberative privilege. G. Wetlaufer, *Justifying Secrecy: An Objection to the General Deliberative Privilege*, 65 Ind. L.J. 845 (1990). In the article the author points out that even if one assumes that the risk of disclosing the deliberative processes of a governing body impairs future deliberations and thus decreases the effectiveness of the governing body, it does not follow that disclosure will have a net adverse effect on the public interest as a whole. 65 Ind. L.J. at 890, 894. Granting the deliberative privilege, Wetlaufer asserts, will have other effects, most of which will be adverse, on the judiciary and therefore on the government as a whole, on the litigants who would otherwise be entitled to discovery, and on citizens in general. 65 Ind. L.J. at 894. For example, establishing the privilege would effectively empower the governing body or agency asserting it while disempowering the judiciary and the public interest it serves by intruding upon the judiciary's ability to do justice and upon the public's confidence in the system. 65 Ind. L.J. at 891. Likewise, the privilege would most directly affect litigants who would be denied access to documents and testimony bearing closely enough upon their cases that, absent the privilege, discovery would have been permitted. 65 Ind. L.J. at 892. Also, the secrecy that would result from the establishment of the privilege would diminish the level of information available to citizens on the operation of the governing body, on the character or competence of governmental officials, and on the degree to which the government was attending to citizens' needs and interests. 65 Ind. L.J. at 892-93. The establishment of the general deliberative privilege would operate to diminish the sense of accountability under which governing officials conduct their business and might increase the likelihood that they would act in a sloppy or incompetent manner, would confuse their own self interests with the

interests of the public, and would engage in bad acts. 65 Ind. L.J. at 893.

In addition to the adverse effects cited by Wetlaufer, we note that adopting a deliberative process privilege would have the effect of creating an enormous administrative burden on the courts of this state, as they would be required to comb through each alleged deliberative process document to determine if it was discoverable. Other alternatives to granting a deliberative process privilege exist that would be sufficient to protect a governing body's interests. For example, a court may issue an order simply restricting access to and use of the information being challenged as discoverable. This would allow disclosure of disputed documents for purposes of litigating a particular claim while restricting disclosure in ways that would eliminate inhibitions in intragovernmental communications.

We conclude that judicially creating the deliberative process privilege not only would adversely affect the integrity of the judiciary and increase its administrative burden but also would disadvantage parties bringing legal actions against local governments and state agencies. We decline, therefore, to create this privilege as a matter of common law and leave to the legislature the decision of whether to craft such a privilege.

In its second contention the City argues that the contempt fines imposed by the trial court should be vacated, as the City willingly submitted to the contempt order so as to allow the reviewing court to resolve the City's privilege claim. The claim presented an issue of first impression in Illinois.

Prior to the November 4, 1996, contempt order, the court had ruled on four different occasions that no deliberative process privilege existed in Illinois and had ordered the City to turn over the documents requested by the plaintiffs. The City was slow in complying with the orders and on two occasions informed the court that it was willing to subject itself to a contempt citation as a means for appealing the question of the deliberative process privilege.

The court's written contempt order stated that the City's failure to comply with the court's orders compelling discovery was unreasonable and wilful. We understand the trial court's frustration that the orderly progression of this litigation was interrupted by the City's challenging discovery orders that we now agree were correctly entered. We cannot fault the court's basic objective of expediting discovery by utilizing contempt sanctions to enforce its orders. However, we find that the City's expression of willingness to submit to a contempt order, which could then be used as a means of appealing the City's question of first impression, demonstrates that the

City's refusal to comply with the court's order constituted a good-faith effort to secure an interpretation of an issue without direct precedent in this state. *In re Marriage of Daniels*, 240 Ill. App. 3d 314, 338 (1992). The City was not contemptuous in the sense that the court was held in disdain or subjected to scorn. *Sakosko v. Memorial Hospital*, 167 Ill. App. 3d 842, 848 (1988). The City believed that, under the deliberative process privilege, plaintiffs had no right to the documents they were requesting. By subjecting itself to a contempt citation, the City exercised a permissible method of testing a pretrial order. *Cisarik v. Palos Community Hospital*, 193 Ill. App. 3d 41, 43 (1989). Accordingly, because the issue in question was one of first impression in this court, we vacate that part of the contempt order imposing the $100-a-day fine. See *Daniels*, 240 Ill. App. 3d at 338-39 (and cases cited therein).

Last, the City contends that the trial court's access order, authorizing plaintiffs' counsel to view the documents the City claims are privileged, was unlawful. As the City points out in its brief, the access order was issued only because the trial court had held that the documents in question and under seal with the court were not privileged. Because we have determined that the documents were not privileged and therefore were discoverable, we need not address the propriety of the access order. Our decision effectively allows plaintiffs access to the documents in question by means of the discovery process.

For the reasons stated above, the judgment of the circuit court of Du Page County is affirmed in part and vacated in part.

Affirmed in part and vacated in part.

THOMAS and RATHJE, JJ., concur.