No. 2--09--0100     Filed: 1-22-10

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| ROCKFORD POLICE BENEVOLENT AND PROTECTIVE ASSOCIATION, UNIT #6 | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 08--CH--349 |
| LARRY MORRISSEY, Mayor of the City of Rockford, CHET EPPERSON, Chief of Police for the City of Rockford Police Department, and THE CITY OF ROCKFORD POLICE DEPARTMENT, | ) ) ) ) ) ) | Honorable |
| Defendants-Appellants. | ) ) ) | Ronald L. Pirrello, Judge, Presiding. |

_____

JUSTICE O'MALLEY delivered the opinion of the court:

Defendants, Larry Morrissey, the mayor of Rockford (mayor), Chet Epperson, the chief of

the Rockford police department (chief), and the City of Rockford Police Department (department),

appeal the order of the circuit court of Winnebago County granting the cross-motion for summary

judgment of plaintiff, the Rockford Police Benevolent and Protective Association, Unit #6, and

denying defendants' cross-motion for summary judgment on plaintiff's Freedom of Information Act

(FOIA) (5 ILCS 140/1 et seq. (West 2006)) request that seeks to compel defendants to disclose the

results of a three-part survey[1] conducted by Rockford College at the behest of the department.

_____

[1]While defendants argue that the documents in question are actually an "audit," defendants

nevertheless persistently refer to the documents as a "survey."  We adopt this terminology and note

Defendants argue that the survey should not be disclosed, under the theories that it is exempt as an audit (see 5 ILCS 140/7(1)(n) (West 2006)), as a personnel matter (see 5 ILCS 140/7(1)(b)(ii) (West 2006)), and under the self-critical analysis privilege. Defendants also argue that plaintiff is not entitled to an award of attorney fees or, alternatively, if plaintiff is entitled to attorney fees, then the trial court's fee award was excessive. We affirm.

The following factual summary is taken from the record on appeal. Plaintiff is the union representing the police officers employed by the department.

In 2007, the department asked a Rockford College class to conduct an anonymous three-part survey. The survey would be given to sworn police officer employees of the department, civilian employees of the department, and residents living in the "Weed & Seed" area of Rockford. Defendants represent that the purpose of the survey was to assess the department's performance. The department's employees were also asked to rate their job satisfaction.

On October 31, 2007, plaintiff submitted FOIA requests seeking disclosure of (1) the three-part survey, (2) records about certain financial expenditures and invoices relating to the department for the period beginning April 10, 2006, through October 31, 2007, (3) public records that the chief had access to or control over in regard to money accounts, funds, credit cards, and cash supplied by the City of Rockford or the department, and (4) department records pertaining to all sick-time usage for the period beginning January 1, 2004, and ending October 31, 2007. On November 27, 2007, defendants denied the first three requests and agreed to the fourth request, subject to agreed-upon limitations. As pertinent here, the FOIA request for the survey was denied based on the audit exception (5 ILCS 150/7(1)(n) (West 2006)), the self-critical analysis privilege as developed under

that our use of the term "survey" is not meant to prejudge defendants' contention.

the federal common law, and the deliberative process/preliminary draft exception (5 ILCS 140/7(1)(f) (West 2006)).

Plaintiff filed this action to contest defendants' denial of its first three FOIA requests. During pretrial negotiations, the parties were able to come to an agreement concerning the second and third FOIA requests, for disclosure of the records of financial expenditures and invoices and the public records that the chief had access to or control over. The parties filed cross-motions for summary judgment regarding the disclosure of the survey. On September 29, 2008, the trial court heard argument on the cross-motions for summary judgment. The court directed the parties to submit their positions regarding attorney fees.

On October 9, 2008, the trial court entered judgment on the FOIA request and attorney fees. The trial court held that the survey was not exempt from disclosure either as an audit or pursuant to the self-critical analysis privilege, or any other privilege. The trial court expressly determined that the "fundamental purpose of the request for the 3-part Survey was not to further commercial interests" and that plaintiff was entitled to reasonable attorney fees in an amount to be determined.

Defendants filed a motion to reconsider. The trial court denied defendants' motion to reconsider, accepted plaintiff's supplemental petition for attorney fees, determined that plaintiff was due an award of attorney fees of over $14,000, and ordered defendants to produce the three-part survey within 48 hours. Defendants filed a motion to stay enforcement of the order, which the trial court granted pending the outcome of this appeal. Defendants timely appeal.

Defendants appeal from the trial court's grant of summary judgment in favor of plaintiff. We review de novo the trial court's grant of a motion for summary judgment. Blair v. Nevada Landing Partnership RBG, LP, 369 Ill. App. 3d 318, 322 (2006).

Defendants' first contention on appeal is that the survey constitutes an audit for purposes of section 7(1)(n) of the FOIA (5 ILCS 140/7(1)(n) (West 2006)) and that as an audit, it is exempt from disclosure. Section 7(1)(n) of the FOIA exempts:

"Communications between a public body and an attorney or auditor representing the public body that would not be subject to discovery in litigation, and materials prepared or compiled by or for a public body in anticipation of a criminal, civil or administrative proceeding upon the request of an attorney advising the public body, and materials prepared or compiled with respect to internal audits of public bodies." 5 ILCS 140/7(1)(n) (West 2006).

Under the FOIA, public records are presumed to be open and accessible. Illinois Education Ass'n v. Illinois State Board of Education, 204 Ill. 2d 456, 462 (2003). Indeed, the FOIA clearly sets forth the legislative intent behind its enactment:

"Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest.

This Act is not intended to be used to *** disrupt the duly-undertaken work of any public body independent of the fulfillment of any of the fore-mentioned rights of the people to access to information.

***

These restraints on information access should be seen as limited exceptions to the general rule that the people have a right to know the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of government and the lives of any or all of the people. The provisions of this Act shall be construed to this end." 5 ILCS 140/1 (West 2006).

When a public body receives a proper request for information, it must comply with the request unless one of the section 7 (5 ILCS 140/7 (West 2006)) exemptions applies. Illinois Education Ass'n, 204 Ill. 2d at 463.

If the public body seeks to use one of the section 7 exemptions as a ground for refusing to disclose the requested information, it must give written notice specifying the particular exemption it is claiming to authorize the denial. Illinois Education Ass'n, 204 Ill. 2d at 464. If the party seeking the information challenges in the circuit court the public body's denial, the public body shoulders the burden of proving that the records in question fall within the claimed exemption. Illinois Education Ass'n, 204 Ill. 2d at 464. To meet its burden and to assist the court in making its determination, the public body must provide a detailed justification for its claim of exemption, addressing the requested records specifically and in a manner allowing for adequate adversarial testing. Illinois Education Ass'n, 204 Ill. 2d at 464. With these principles in mind, we turn to defendants' particular contentions.

Defendants note that "audit" is not defined within the FOIA. Defendants also correctly note that the fundamental rule in interpreting a statute is to ascertain and give effect to the intent of the legislature. People ex rel. Birkett v. Konetski, 233 Ill. 2d 185, 193 (2009). The best evidence of

legislative intent is the language used in the statute, giving that language its plain and ordinary meaning. Konetski, 233 Ill. 2d at 193. Defendants note that "audit" is defined as a methodical examination and review. Defendants assert that the survey at issue here was actually an "audit," as it was a methodical examination and review of the department's performance as viewed by department personnel and the local public. Defendants conclude that this assessment of the department's performance qualifies as an audit subject to the section 7(1)(n) exemption. We disagree.

In the first instance, defendants provide no detailed rationale (see Illinois Education Ass'n, 204 Ill. 2d at 464) to explain their bare conclusion that the survey (again, we note that this is defendants' own terminology) qualified as an "audit" under section 7(1)(n) of the FOIA. Because of this failure alone, we could properly hold that defendants did not meet their burden of providing a "detailed justification," "addressing the requested documents specifically." (Emphasis in original.) Illinois Education Ass'n, 204 Ill. 2d at 464.

In the second place, defendants offer no explanation of how the survey satisfies the definition of an "audit." The noun "audit" is defined as "a formal or official examination and verification of books of account (as for reporting on the financial condition of a business at a given date or on the results of its operations for a given period)" and as "a methodical examination and review of a situation or condition (as within a business enterprise) concluding with a detailed report of findings : a rendering and settling of accounts." Webster's Third New International Dictionary 143 (1993). "Audit" is also defined as "the final report following a formal examination of books of account : an account as adjusted by auditors : final statement of account." Webster's Third New International Dictionary 143 (1993). As a verb, "audit" is defined as "to examine and verify (as the books of

account of a company or a treasurer's accounts)." Webster's Third New International Dictionary 143 (1993). Interestingly, these definitions all place "audit" into a financial or accounting context, even though the word is applicable in other contexts. Plaintiff asserts, without relevant authority to support its contention, that "audit" invariably means a formal examination of an organization's financial situation. While neither plaintiff nor we have found any Illinois authority to support this contention, we note that the dictionary definition offers some small support. In any event, defendants offer no explanation as to how the survey here is a "methodical examination" of the department's condition or situation, or how a subjective questionnaire about job satisfaction and performance, completed by department personnel and members of the public, qualifies as a "methodical examination."

On the other hand, a "survey" is defined as "a study of a specified area or aggregate of units (as human beings) usu. with respect to a special condition or its prevalence or with the objective of drawing conclusions about a larger area or aggregate **:** a systematic collection and analysis of data and esp. statistical data on some aspect of an area or group." Webster's Third New International Dictionary 2302 (1993). The survey here seems to fit more comfortably into the definition of "survey," in that questions about job performance and satisfaction seem to have the purpose of "drawing conclusions about" the department as a whole. Moreover, the format of questions about job satisfaction and performance surely leads to a tabulation and statistical analysis of the data collected in the survey. Based on our review of the ordinary meaning of the word "audit," we cannot conclude that the trial court erred in determining that the survey was not exempt as an audit. Accordingly, we reject defendants' first contention.

Defendants also contend that the "internal audit conducted at the request of the Rockford Police Department is a job performance evaluation for the Police Department, essentially a personnel matter," which falls under the exemption for personnel files. 5 ILCS 140/7(1)(b)(ii) (West 2006). Once again, defendants fail to explain how the survey can be considered a personnel matter when the questions did not pertain to individuals and the responses were anonymous. Likewise, we reject the suggestion that the department as a whole is entitled to a personnel file exemption, as the personnel files exemption seeks to prevent an invasion of an individual's personal privacy, and not a public body's "privacy."

Next, defendants contend that the survey should be exempt from disclosure under the self-critical analysis privilege. Defendants contend that, in order to assert the self-critical analysis privilege, a party must show that: (1) the information sought resulted from a self-critical analysis undertaken by the party seeking protection; (2) the public has a strong interest in protecting the free flow of the information sought; (3) the information is of the type whose flow would be curtailed if discovery were allowed; and (4) the document was prepared with the expectation that it would be kept confidential and has in fact been kept confidential. See Tice v. American Airlines, Inc., 192 F.R.D. 270, 272-73 (N.D. Ill. 2000). Defendants assert that it is "undisputed" that the survey "resulted from a self-critical analysis undertaken by the City of Rockford." Defendants assert that it also meets the other elements of the federal common-law privilege.

Defendants' argument fails on several grounds. In the first place, the FOIA enumerates its exemptions in section 7. A self-critical analysis exemption is not to be found among the enumerated exemptions. The FOIA presumes that requested information should be released unless the information falls under one of the section 7 exemptions, which are to be read narrowly. Carter v.

<u>Meek</u>, 322 Ill. App. 3d 266, 268 (2001). Under well-settled rules of statutory construction, we may not depart from the statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express. <u>People ex rel. Madigan v. Kinzer</u>, 232 Ill. 2d 179, 184-85 (2009). The fact that the FOIA does not expressly include an exemption for self-critical analysis means that we cannot read that exemption into it.

Second, we note that the self-critical analysis privilege has not been adopted by the Illinois courts. Indeed, privileges are disfavored because they are in derogation of the search for truth. <u>People ex rel. Birkett v. City of Chicago</u>, 292 Ill. App. 3d 745, 749 (1997), <u>aff'd</u>, 184 Ill. 2d 521 (1998). Privileges are strictly construed as exceptions to the general duty to disclose. <u>Birkett</u>, 292 Ill. App. 3d at 749. Our supreme court has consistently stated that "the extension of an existing privilege or establishment of a new one is a matter best deferred to the legislature." <u>Birkett</u>, 184 Ill. 2d at 528. Thus, the judiciary has an institutional bias against creating a heretofore unknown privilege as a matter of common law. Instead, the courts refer the creation and expansion of privileges to the legislative arena. Because the legislature has not adopted the self-critical analysis privilege into the FOIA, we will not create such a privilege here.

Third, we note that defendants' use of federal cases to support the self-critical analysis privilege is doubly dubious. In the first place, decisions of federal district courts are not binding upon state courts and are, at most, persuasive authority. <u>Birkett</u>, 292 Ill. App. 3d at 754. Second, and more importantly, however, Illinois courts have repeatedly noted that the Illinois version of the FOIA is different from the federal version and is, therefore, subject to a different interpretation. <u>Carter</u>, 322 Ill. App. 3d at 269 (citing <u>Lieber v. Board of Trustees of Southern Illinois University</u>, 176 Ill. 2d 401 (1997), and <u>American Federation of State, County & Municipal Employees v. County</u>

of Cook, 136 Ill. 2d 334 (1990), to support proposition that the Illinois FOIA differs from, and is interpreted differently than, the federal FOIA). For these reasons, we cannot accept defendants' argument and authority for creating a self-critical analysis privilege in this matter.

Defendants next contend that we should create a self-critical analysis privilege because the legislature codified this privilege into the Code of Civil Procedure via the Medical Studies Act (735 ILCS 5/8--2101 et seq. (West 2006)). Citing Roach v. Springfield Clinic, 157 Ill. 2d 29, 40 (1993), defendants argue that the self-critical analysis privilege embodied in the Medical Studies Act ensures that "members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care." Defendants urge, by analogy to the Medical Studies Act, that we should likewise create a self-critical analysis privilege that applies to the FOIA. We disagree.

The fact that the legislature codified this privilege in relation to the internal quality control of medical institutions means that the legislature easily could have codified the provision into the FOIA, had it chosen to do so. The privilege's presence in the Medical Studies Act juxtaposed against its absence in the FOIA strongly supports the opposite of defendants' argument--that the legislature deliberately omitted the privilege from the FOIA and we should not engraft it into the FOIA. See Adames v. Sheahan, 233 Ill. 2d 276, 311 (2009) (particular language included in one part of a congressional enactment and omitted in another raises the presumption that Congress intended the inclusion or exclusion). Accordingly, we reject defendants' invitation to create a self-critical analysis privilege in relation to the FOIA.

Defendants' final contention on appeal is that plaintiff should not have received an award of attorney fees. Alternatively, defendants contend that, even if an award of attorney fees was

appropriate, this award was excessive. When considering a challenge to a party's entitlement to attorney fees under the FOIA, we review the trial court's decision for an abuse of discretion. Callinan v. Prisoner Review Board, 371 Ill. App. 3d 272, 277 (2007). "An abuse of discretion will be found where the court applied the wrong legal standard." Callinan, 371 Ill. App. 3d at 277.

We begin our consideration of defendants' contention with the text of the FOIA. Prior to 2004, section 11(i) of the FOIA provided:

"If a person seeking the right to inspect or receive a copy of a public record substantially prevails in a proceeding under this Section, the court may award such person reasonable attorneys' fees if the court finds that the record or records in question were of clearly significant interest to the general public and that the public body lacked any reasonable basis in law for withholding the record." 5 ILCS 140/11(i) (West 2002).

Effective January 1, 2004, section 11(i) was amended. As of the time plaintiff filed this case, section 11(i) provided, pertinently:

"If a person seeking the right to inspect or receive a copy of a public record substantially prevails in a proceeding under this Section, the court may award such person reasonable attorneys' fees and costs. If, however, the court finds that the fundamental purpose of the request was to further the commercial interests of the requestor, the court may award reasonable attorneys' fees and costs if the court finds that the record or records in question were of clearly significant interest to the general public and that the public body lacked any reasonable basis in law for withholding the record." 5 ILCS /140/11(i) (West 2006).

Under the pre-amended version of the provision, a plaintiff was eligible to receive an award of attorney fees if it proved that (1) it substantially prevailed; (2) the records were of significant interest to the general public; and (3) the public body lacked any reasonable basis in law for withholding the records. 5 ILCS 140/11(i) (West 2002); Callinan, 371 Ill. App. 3d at 274. To be eligible for attorney fees under the current version of the provision, a plaintiff without a commercial interest need prove only that it substantially prevailed, while a plaintiff with a commercial interest is still required to prove that its request served a public interest and that the defendant lacked a reasonable basis for withholding the records. 5 ILCS 140/11(i) (West 2006); Callinan, 371 Ill. App. 3d at 275.

Defendants argue that plaintiff's motivation was primarily commercial and that it thus had to prove that it substantially prevailed, that the records were of significant interest to the general public, and that defendants lacked any reasonable basis in law for withholding the records. Defendants also assert that, in any event, plaintiff did not substantially prevail. We disagree.

The trial court expressly held that "[p]laintiff's fundamental purpose of the request for the 3-part [s]urvey was not to further commercial interests." Further, in awarding plaintiff attorney fees, the trial court impliedly determined that plaintiff had substantially prevailed. "[W]hen a trial court finds that a plaintiff has substantially prevailed, it should grant attorney fees to a noncommercial plaintiff." Callinan, 371 Ill. App. 3d at 277. The court may deny fees only where special circumstances would render the fee award unjust, such as where the plaintiff avoids the expense of attorney fees by proceeding pro se, the defendant settles with the plaintiff solely to end a frivolous suit and avoid litigation expenses, the plaintiff was not instrumental in achieving the remedy sought, or the plaintiff agreed to waive its right to pursue attorney fees. Callinan, 371 Ill. App. 3d at 277. The trial court made no finding of any special circumstance that would justify denying plaintiff's fee

request. Likewise, defendants do not argue that there were any special circumstances that would justify denying plaintiff's fee request. Considering the evidence in the record, we conclude that an award of attorney fees to plaintiff was not an abuse of discretion.

Citing Lovell v. Department of Justice, 589 F. Supp. 150, 153-54 (D.D.C. 1984), and Kuffel v. United States Bureau of Prisons, 882 F. Supp. 1116, 1127 (D.D.C. 1995), Defendants argue that whether a plaintiff substantially prevailed is determined by considering whether the plaintiff's actions caused the defendant to release the records. Defendants do not, however, close the analytical loop and attempt to demonstrate that plaintiff's suit did not cause defendants to turn over the survey. Perhaps defendants intend to imply that, because they have not yet made the survey available to plaintiff, pending the outcome of this appeal, we should hold that plaintiff has failed to earn the disclosure of the survey. On the other hand, there is nothing in the record to suggest that defendants would have released the three-part survey routinely or in the absence of plaintiff's lawsuit. Thus, we conclude that, even though defendants cite authority about how to determine whether a party has substantially prevailed for the purposes of section 11(i) of the FOIA, defendants' lack of argument effectively concedes the point that plaintiff did indeed substantially prevail in winning the disclosure of the survey, and the record amply supports this conclusion.

Defendants also argue that plaintiff's motivation in requesting the survey was primarily commercial. Defendants reason that plaintiff is a union, which exists to further the interests of its members with respect to their wages, benefits, and working conditions. Defendants further contend that the "fundamental purpose of the requests was to further [p]laintiff's commercial interest in the collective bargaining arena." Once again, however, defendants fail to close the analytical loop and demonstrate a relationship between plaintiff's request for the survey and its motivation to advance

its collective bargaining position. Such a relationship, between collective bargaining and a survey of union and nonunion employees' job satisfaction and the public's perception of the effectiveness of the department, is not immediately apparent.

These considerations also serve to distinguish the authority on which defendants rely. Defendants cite Lieber v. Board of Trustees of Southern Illinois University, 316 Ill. App. 3d 266, 270 (2000), to illustrate the manner in which a commercial interest will defeat a plaintiff's request for attorney fees. There, the plaintiff owned university-approved, off-campus freshman housing and sought to compel the university, pursuant to the FOIA, to disclose the names and addresses of accepted but not enrolled freshmen who had expressed an interest in off-campus housing. The plaintiff's commercial interest is manifest. Likewise, it is clear that the information sought, the names and addresses of accepted but not enrolled freshmen interested in off-campus housing, is of little interest to the general public. Here, by contrast, a survey of the public dealing, in part, with the public's perception of the effectiveness of the local police department is of obvious and compelling interest to the general public. Further, it is difficult to see the nature of plaintiff's purported commercial interest. Accordingly, we find Lieber to be distinguishable. For the foregoing reasons, we cannot say that the trial court abused its discretion in deeming plaintiff eligible for reasonable attorney fees pursuant to section 11(i) of the FOIA.

Defendants argue alternatively that the award of fees was excessive. Defendants note that the "policy behind [section 11(i) of the FOIA] is to prevent someone from expending thousands of dollars on attorney fees solely to support a commercial interest and then seeking to have taxpayers who have little or no interest in the information, pay his or her attorney fees." Lieber, 316 Ill. App. 3d at 270. Defendants further note that the fee provision was intended neither as a reward for a

successful plaintiff nor as a punishment for the government for wrongly withholding records. Hamer v. Lentz, 132 Ill. 2d 49, 62 (1989). Defendants assert that the award of over $14,000 in attorney fees is punitive and clearly excessive.

Again, defendants do not close the analytical loop and demonstrate (or even assert) that plaintiff's counsel's time spent on this matter was unreasonable, or that in light of his experience and the complexity of the issues here his billing rate was excessive compared to the usual and customary rate in the locality for such services. We are left only with the conclusory assertion that the fees were excessive.

Defendants point to the trial court's "uncertainty" in making its fee award. That "uncertainty" consisted of four questions to plaintiff's attorney about his supplemental fee petition, plus the instruction to leave blank the space for attorney fees to be awarded. The trial court then proceeded to award plaintiff the full amount of attorney fees sought. We agree with plaintiff that the record fails to show that the trial court was uncertain about the fee award.

Further, the cases cited by defendants are inapposite. Hamer recites only that the fee award is neither a reward for a successful plaintiff nor a punishment for a recalcitrant government. We see no reason to place a union, which is a not-for-profit organization whose budget is determined by dues collected from its membership, and which seeks the representation of an attorney, in a different position from an individual who makes a FOIA request utilizing his or her own attorney. Both have to spend their limited resources on the services of an attorney. As Hamer suggests, the fee award provision is designed to give the average individual the ability to make and prosecute a FOIA request of the government. Hamer, 132 Ill. 2d at 62 (the purpose of the fee provision "is to ensure

enforcement of the FOIA," "by removing the burden of legal fees, which might deter litigants from pursuing legitimate FOIA actions").  Thus, Hamer actually supports plaintiff's position.

Lieber is inapposite because it presupposes that the plaintiff has a commercial interest and that the information sought is of interest to only the plaintiff, to be used in furthering its commercial goals.  As we have seen, the trial court's determination, that advancing its commercial interests was not plaintiff's fundamental purpose in making its FOIA request, was not erroneous.  Likewise, here, unlike in Lieber, the information sought was of significant interest to the general public.  Lieber's concern, then, that an individual could make the taxpayers pay his attorney to advance his commercial interests via the FOIA, is not present here.  Lieber offers no support to defendants' position in light of the circumstances present in this case.  Accordingly, we reject defendants' argument that the attorney fee award was excessive.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

SCHOSTOK and HUDSON, JJ., concur.